The opinion of the Court was delivered by
Nott, J.
It is now very well settled, that words are to be construed by a Court and jury in the same manner as they were or ought to have been understood or construed by the person to whom they were spoken.[1] A person may convey a charge of felony as well by way of question as by a direct allegation. And it must always be a question of construction, whether such is his meaning or not. The question was, therefore, properly referred to the jury, and the motion for a nonsuit must be refused.
The motion for a new trial admits of two questions :
1. Whether the defendant ought to have been permitted to give the general character of the plaintiff in evidence, by way of mitigation ?
2. Whether he ought to have been permitted to give evidence of a particular crime committed by him, of a distinct character from that with which he was charged ?
The first question appears to me to be settled in the case of Buford v. M’Luny, 1 Nott & M’Cord, 268, and on grounds perfectly satisfactory to my mind. There can be nothing more unreasonable, than that a person, who, by a long course of vice, has proved himself to be so destitute of-every moral principle as to be capable of committing any crime, should be entitled to recover the same damages in an action of slander *as a person of spotless fame, merely because he has not acquired any general character, with regard to the particular crime of L which he has been accused. It is within our daily experience, that there are persons in every community, so destitute of character, or rather, so notorious for their bad characters, as to furnish good grounds of belief, that they are capable of committing many offences, of which they may never have been accused, and for which they may not have acquired any particular character. Suppose a person who had been guilty of felony and robbery, until his personal safety rendered it necessary that he should banish himself from society, should live in the woods, and support himself by rapine and plunder. Would any one hesitate to believe, if such a person should be accused of committing a rape, or of swearing falsely, that he was bad enough to do either, yet, in an action of slander for such a charge, if the testimony was restricted to the character of the person with regard to those particular crimes, the defendant would probably fail in his proof. But I will illustrate the principle by another case, which I believe does not unfrequently occur. There are, in every community, men, who, from long habits of drunkenness, rioting, swindling, stealing, and associating with rogues and felons, are considered fit instruments for the perpetration of any crime. Should such an one be brought into Court as a witness, to establish the innocence of a man, as bad as himself, perhaps an accomplice, might not any one believe that he had committed perjury. In an action of slander for such a charge, might not his general character be proved by way of mitigation, though he had never been sworn in a court of justice before, and, therefore,, never could have been suspected of such a crime ? I think it is a ques *682 tion, respecting which, we ought not to hesitate, and it appears to me that the law which has been cited, to prove the contrary, establishes the principle. Mr. Starkie, in his Treatise on Slander, says, “ a man of bad character, is not to be represented as worse than he really is, and, there-f°re> titled a compensation to be measured by the excess, J beyond what is due to him.” 299, cited in Buford and M’Luny, 1 Nott & M’Cord, 268. What does he mean by saying that the compensation is to be measured by the excess beyond what is. due to him, if the defendant be not permitted to investigate his character to ascertain how far the charge has exceeded the truth. It is to be observed that this opinion only goes to allow the general character to be given in evidence ; but not particular traits in his character different from that charged. It is true, the party whose character is thus attacked, may require the witness to give the reasons and grounds of his opinion, and this may lead to evidence of particular facts. But that is for the benefit of the plaintiff, who, if he will require his character to be particularly investigated, must suffer the materials of which it is composed, to be examined. And if, when his whole character is before the jury, they think it to be so bad, that it cannot be injured, they will and ought to give only nominal damages. But if the defendant fails in that part of his defence, the plaintiff will have the benefit of it.
It is asked, if the plaintiff has a right, on his cross-examination, to reduce the questions down to the particular instances in which his character is vulnerable, for what purpose will you go into an investigation of his general character at all ? The reason is obvious. If the defendant succeeds in establishing the general character, he so far succeeds in the object of his defence. But his attempting to do so, will not preclude the plaintiff from disproving the fact. Proving a particular defect in the character of the plaintiff, will not necessarily operate as a mitigation of the defendant’s offence. It will be a matter for the consideration of the jury, and may often produce a contrary effect.
2. After these observations, it would seem that little need be said on the second question. The evidence offered of a particular crime was properly rejected. A person cannot be supposed prepared to answer evidence of any particular offence. Besides, the fact, *that a man J has committed one crime, does not furnish an excuse for a person maliciously, and without any cause of suspicion, to charge him with another. It is only where the character is so bad, as to furnish the grounds of belief that he is capable of committing any. crime, that such evidence is to be allowed. It is true, the extent of the proof cannot be seen until it is heard. It then becomes a question of fact for the jury, who will give it the weight to which it is entitled, and no more.
The opinion of the Court, in the case of Buford and M'Luny, was delivered by myself, and if there is anything in that opinion which authorizes the inference, that a person may say before a tribunal of justices,[1] “ I did utter the slanderous words charged, they are not true, I never heard it uttered by human tongue that the party was guilty of the crime they express; the charge arose in the wantonness of my imagination, and was uttered in the maliciousness of my heart, but I am not liable to *683 damages, because the plaintiff is not a man of good general character.” I have been most unfortunate in my manner of expression. Or if I have conveyed an idea, that the real injury done to the character of a person should be the only rule for estimating the damages, or that the defendant may plead the general character of the plaintiff, in justification of a groundless and malicious slander, I have been equally unfortunate. And I avail myself of this opportunity to remove the impression. I admit, that a person of bad character may be unjustly slandered, and may be entitled to heavy damages for such slanders. But I hold, that good character, either general or special, is the substratum of every action of slander, and that a jury, in estimating the damages, should have a regard, as well to the character of the plaintiff, as to the malice of the defendant. And that a woman ought not to be taken from the stews and brothels of a town, to be placed alongside of the most respectable ladies, who equally adorn our drawing-rooms and our churches. Nor that the high priest of vice and ^corruption should be ranked with the pious priest of the parish, or the respectable bishop of the [*516 diocess. Where a person’s character is such, that he cannot safely trust it to a Court and jury, slander can do him but little injury. And a person who is neither ashamed nor afraid to expose his character to the eye of the public, ought not to be permitted to shelter it, under the forms of law, from the eye of a jury.
Bausket, for the motion. A. P. Butter, contra.
I am of opinion that a new trial ought to be granted on the ground, that the evidence of general character was refused.
Colcock and Richardson, JJ., concurred.
Gantt, J., dissented.
See cases cited, 1 N. & McC. 218, note; see 3 McC. 457.

 1 N. & McC. 216.

 1 N. & MeC. 274-5.