## ZIMMERMAN v. McMAKIN.

1. An allegation that "defendant, on January 7, 1882, in the city of S., and in the presence of T. and others, did falsely and maliciously defame and slander the plaintiff, by saying that she had sworn lies on that day before Trial Justice Thomason, on the trial of a cause in which one M. was plaintiff, and one Z. was defendant, thereby injuring the said plaintiff"—states facts sufficient to constitute a cause of action. If more particularity was desired, a motion should have been made, before trial, to require the allegations to be more definitely stated.

2. In action of slander it is not incumbent on plaintiff to show, *beyond a reasonable doubt*, that the defendant uttered the words charged, or their substance.

3. In action of slander it is not necessary to prove the words precisely as laid in the complaint, but it is sufficient to prove them substantially as laid.

4. There seems to be no substantial difference between the words, "public whore," charged in the complaint, and "whorish bitch," the words proved at the trial; and it should have been left to the jury to say whether the words proved were used in the sense of those alleged. The Circuit judge erred in charging, as matter of law, that they were not substantially the same.

Before Fraser, J., Spartanburg, March, 1884.

This was an action commenced February 20, 1882. The allegations of the complaint were as follows :

I. That the plaintiff, Rachael Zimmerman, is the wife of the plaintiff, Edward J. Zimmerman.

II. That the defendant, Elizabeth E. McMakin, is the wife of the defendant, Peter C. McMakin.

III. That after the plaintiff, Rachael Zimmerman, became the wife of the plaintiff, Edward J. Zimmerman, the defendant, Elizabeth E. McMakin, being then the wife of the defendant, Peter C. McMakin, and being in his presence, and encouraged by him, did, on the seventh day of January, 1882, in the city of Spartanburg, S. C., in the presence of one Isham Turbyfill, and a number of other persons, falsely and maliciously defame and slander the plaintiff, Rachael Zimmerman, by calling her a public whore, whereby said Rachael Zimmerman was injured in her reputation to the damage of plaintiffs, in the sum of twenty-five hundred dollars.

IV. That at the time and place aforesaid, and in the presence and hearing of the persons aforesaid, the said Elizabeth E. McMakin, in the presence of, and encouraged by, her husband, the defendant, Peter C. McMakin, did falsely and maliciously defame and slander the plaintiff, Rachael Zimmerman, by saying that she, the said plaintiff, had sworn lies on that day before Trial Justice W. S. Thomason, on the trial of a cause in which one B. J. McMakin was plaintiff, and Edward J. Zimmerman was defendant, thereby injuring the said Rachael Zimmerman in her reputation, to the damage of plaintiffs as aforesaid.

Wherefore plaintiffs demand judgment against the defendants for the sum of twenty-five hundred dollars, and for costs and disbursements of this action.

The defendants denied each and every allegation of the complaint. Other matters are stated in the opinion. The judge charged the jury substantially as stated in the opinion.

*Messrs. Duncan & Sanders*, for appellant.

*Messrs. Bobo & Carlisle*, contra.

March 23, 1885. The opinion of the court was delivered by

MR. JUSTICE McIVER. This is an action brought by the plaintiffs to recover damages for certain slanderous words alleged to have been spoken by the wife of defendant McMakin, of and concerning the wife of the plaintiff Zimmerman. The slander alleged in the third paragraph of the complaint was in calling

Mrs. Zimmerman "a public whore." In the fourth paragraph of the complaint, the slander alleged is that Mrs. Zimmerman "had sworn lies on that day before Trial Justice W. S. Thomason, on the trial of a cause in which one B. J. McMakin was plaintiff, and Edward J. Zimmerman was defendant." The defendants demurred to the fourth paragraph of the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, which demurrer was sustained. At the trial, the testimony on the part of the plaintiffs tended to show that Mrs. McMakin called Mrs. Zimmerman a "whorish bitch," with certain additional adjectives appended, much more forcible than polite, and also that she called her "an infernal, stinking whore," "a whore in most every form." On the part of the defendants, Mrs. McMakin testified that she did not use the words attributed to her above, but that she called Mrs. Zimmerman, a Moorish looking bitch or devil, she did not remember which.

The Circuit judge charged the jury that it was incumbent upon the plaintiffs "to show, by a preponderance of the evidence, beyond a reasonable doubt, that the words, or at least the substance of the words alleged to have been spoken, were used by the defendant;" that if they come to the conclusion that the charge made was that Mrs. Z. was "a whorish bitch," this would not be sufficient to establish the allegation of the complaint, for those words only indicate that she had the tendencies of character of a whore, but do not necessarily import that she was a whore. But if they come to the conclusion that the words used were that she was "a stinking whore," or an "infernal stinking whore," then those words, being substantially the same as the words "public whore," would be sufficient to support the allegation in the complaint.

The jury having rendered a verdict in favor of the defendants, and they having entered judgment thereon, the plaintiffs appeal substantially on the following grounds: 1. Because of error in sustaining the demurrer. 2. Because of error in charging that the plaintiffs must prove the words as alleged in the complaint, or at least their substance, beyond a reasonable doubt. 3. Because of error in instructing the jury that the words "whorish

bitch" were not sufficient to establish the allegation of the complaint.

As is said in several of our cases, even prior to the adoption of the code, the strictness formerly required both in regard to the pleading and evidence in actions for slander has been much relaxed in modern times; and certainly since the adoption of the code, no court can be expected to require a strict adherence to those rigid rules which at one time prevailed. As is said in *Pomeroy on Remedies*, § 549: "The true doctrine to be gathered from all the cases is that if the substantial facts which constitute a cause of action are stated in a complaint or petition, or can be inferred by reasonable intendment from the matters which are set forth, although the allegation of these facts are imperfect, incomplete, and defective, such insufficiency pertaining, however, to the form rather than to the substance, the proper mode of correction is, not by demurrer, nor by excluding evidence at the trial, but by a motion, before the trial, to make the averments more definite and certain by amendment." This doctrine has been distinctly recognized in this state. *Childers* v. *Verner*, 12 *S. C.*, 1.

Now, testing the fourth paragraph of the complaint by this rule, we do not think it was demurrable upon the ground that it did not state facts sufficient to constitute a cause of action. The allegation was that Mrs. Zimmerman had sworn lies before a certain trial justice, on the trial of a cause in which certain persons named were parties. This was in effect a charge of perjury, for it was not simply a charge that Mrs. Z. had sworn falsely, but that the false oath was taken before an officer competent to administer an oath, and in a judicial proceeding, to wit, a trial of a cause. The defendant certainly could not have been misled· or misinformed as to the nature of the charge; and if any more particularity in the statement of the facts was desired, then, under the rule which we have cited, the proper mode of attaining that end was by a motion, before the trial, to require the plaintiffs to make a more specific statement. Even under the former and more strict system of pleading, it was held, in the case of *Simpson* v. *Vaughan* (2 *Strobh.*, 40), that it was not necessary, in an action for slander for charging the plaintiff with false swearing, "to so charge and state the false swearing, in the pre-

liminary part of the declaration, as would be necessary in an indictment for perjury. Still, enough ought to appear, in words or by legal intendment, to show an oath in a court of justice." In this case it did appear, if not in words, certainly by legal intendment, that the oath was taken in a court of justice.

So in a case like the one now under consideration, *Dalrymple* v. *Lofton* (2 *McMull.*, 112), it was held that it was not necessary to aver in the declaration that the justice had jurisdiction of the cause in which the plaintiff was sworn as a witness, or that his testimony was on a point material to the issue, for these things will be presumed until the contrary is made to appear. So when the same case subsequently came before the court, as reported in 2 *Speer*, 588, it appeared that the allegation was, "You swore falsely on the trial of a case between me and Jerry Joiner before Squire Johnson," it was held that the words spoken did not *per se* impute the guilt of perjury, because the addition of "squire" to the name of Johnson did not impute that he was an officer competent to administer an oath; but if the words "court," or "magistrate," or "justice," had been used, the crime of perjury would have been imputed; "but in the absence of any word aptly denoting a court or judicial officer, the word 'squire' or 'esquire,' which is unknown to our law, and is, by the usage of our society, applied without any just discrimination, can be of no avail." In the present case, however, the word trial justice was used, a word which denotes a judicial officer, competent to administer an oath, with jurisdiction for the trial of causes.

The case of *Morgan* v. *Livingston* (2 *Rich.*, 573) is cited by counsel for respondents to show that the words "you swore a lie," or "he swore a lie," are not actionable *per se*, nor can an action be maintained for the use of such words by an innuendo that they were intended to impute perjury, but that there must be an averment and colloquium of a judicial proceeding to which such words referred. This, no doubt, is good law, for it is not every false swearing which constitutes perjury. In that case the words were introduced by a colloquium, in which was set out a suit before a magistrate between certain parties, in which the plaintiff was examined as a witness, and that defendant, speaking of his testimony so given, said to the plaintiff, "you swore a

lie," and that allegation was held sufficient. In the present case, however, the allegation was not simply that Mrs. Z. had sworn lies, in which case some prefatory averment would have been necessary to connect such false swearing with a judicial proceeding, but here the words used were that the plaintiff "had sworn lies on that day before trial justice W. S. Thomason, on the trial of a cause in which one B. J. McMakin was plaintiff and Edward J. Zimmerman was defendant;" and inasmuch as the words used, of themselves, showed that the false swearing was before an officer competent to administer an oath in the course of a judicial proceeding—the trial of a cause—there certainly could be no necessity for introducing such words by a prefatory averment, or colloquium, in which the very same facts should be stated as appear in the words themselves. We are satisfied, therefore, that the Circuit judge erred in sustaining the demurrer to the fourth paragraph of the complaint.

The next question is as to that portion of the charge in which the Circuit judge instructed the jury that it was incumbent on the plaintiffs "to show by a preponderance of the evidence the fact, beyond a reasonable doubt, that the words, or at least the substance of the words alleged to have been spoken, were used by the defendant." The point of the objection is that the jury were instructed that the burden was on the plaintiff, to show not only by a preponderance of the evidence, but "beyond a reasonable doubt," that the words alleged, or their substance, were spoken by the defendant. In this we think there was error, as the distinction between civil and criminal cases seems to have been overlooked. The well settled rule in the former class of cases is, that it is sufficient for the plaintiff to establish his case by a preponderance of the evidence, and that he is not, as in criminal cases, bound to establish it beyond a reasonable doubt. This long established and well settled rule was disregarded when the jury were told that the plaintiffs must establish the words alleged, not merely by a preponderance of the evidence, but also "beyond a reasonable doubt;" and inasmuch as it seemed to be a question of great importance in the view taken by the Circuit judge, whether the words used were those testified to by Mrs. Z., or those testified to by other witnesses, it is not unlikely

that the plaintiffs sustained prejudice from this erroneous instruction.

The only remaining inquiry is, whether there was any error in instructing the jury that if they came to the conclusion that the words "whorish bitch," and not the words "public whore," or "stinking whore," or "infernal stinking whore," were the words actually used, then the allegation of the complaint was not sustained and the action could not be maintained. There is no doubt that it is not necessary to prove the words precisely as laid in the complaint, but that it will be sufficient to prove them substantially as laid; and this rule was recognized by the Circuit judge in this case. Now the practical question in this case is whether there is any substantial difference between calling a female a public whore or calling her a whorish bitch. In Webster's Unabridged Dictionary the word "whore" is defined: "A woman who practises unlawful sexual commerce with men, especially one who does it for hire; a harlot," and the synonyms given are "harlot, courtesan, prostitute, strumpet, punk, wench, concubine." His definition of the word "whorish" is: "Resembling a whore in character or conduct; addicted to unlawful sexual pleasures; incontinent; lewd; unchaste." In Worcester's Unabridged Dictionary the word "whore" is defined: "A woman who practises illicit intercourse with men for hire; a prostitute; a harlot; a concubine; a strumpet; a punk." And his definition of the word "whorish" is "unchaste; lewd; incontinent." In view of these definitions, and in view of what we suppose would be the common understanding of such terms, we confess that we are unable to see any substantial difference between them.

But aside from this, and whatever may be the strictly correct definitions of these unsavory words, we think there was error on the part of the Circuit judge in instructing the jury as matter of law that these words were not substantially the same. In *Hogg* ads. *Wilson* (1 *Nott & McC.*, 216) it is said: "Words are to be construed according to their most obvious meaning and import; and courts and juries cannot understand them differently from all the world besides. That they shall be substantially proved as charged is all that can or ought to be required. Could any person understand the words proved in this case in any other sense

than as conveying a direct charge of hog stealing?" In *Sawyer ads. Eifert* (2 *Nott & McC.*, 511) the action was for slander in charging the plaintiff with having stolen iron and steel from defendant. In one count the defendant was charged with having spoken the words by way of interrogation, and in the other with having accused him directly of the larceny. The proof was that the words were spoken interrogatively. In delivering the opinion of the court, Nott, J., said: "It is now very well settled that words are to be construed by a court and jury in the same manner as they were, or ought to have been, understood or construed by the person to whom they were spoken. A person may convey a charge of felony as well by way of question as by a direct allegation. And it must always be a question of construction whether such is his meaning or not. The question was therefore properly referred to the jury." In *Davis* v. *Johnston* (2 *Bail.*, 579) it is said: "The rule in verbal slander, as to the construction of words, is that they are to be understood in their ordinary and popular meaning. If words are susceptible of two meanings, one imputing a crime and the other innocent, the latter is not to be adopted and the other rejected, as a matter of course. In such a case, it must be left to the jury to decide in what sense the defendant used them. Their conclusion must be formed from the whole of the circumstances attending the publication, including the sense in which the witnesses understood the words."

In *Morgan* v. *Livingston* (2 *Rich.*, 573), the words alleged to have been used, in one of the counts, as imputing a charge of larceny, were: "You hired a negro to kill a beef and bring it to you; you are a sheep-killing son of a bitch; you make your living at night when honest people are abed; you get your living by sneaking about of nights; you stole a beef; you are a roguish rascal; you stole some hogs; you got some hogs dishonestly." The proof was that the words used were, "You get your living by sneaking about when other people are asleep. What did you do with the sheep you killed? Did you eat it? It was like the beef you got negroes to bring you at night. Where did you get the little wild shoats you always have in your pen?" The witness, who proved these words, was asked what he understood by them, and he replied that he understood the defendant to charge the plain-

tiff with stealing. The defendant appealed upon the grounds, amongst others, that the words proved were not those laid in the declaration; that the words proved were not actionable; and that whether the words proved impute the charge of larceny, should have been decided by the court, and that it was error to permit the witness to prove his understanding of the words. All of these grounds were overruled, the court saying: "It is not necessary that the words, in terms, should charge a larceny. If taking them altogether, in their popular meaning, such is the necessary inference, then there is no doubt that they are actionable. * * * But if the words were doubtful and ambiguous, the plaintiff had the right to inquire of the bystanders, how did you understand the words? And if they said they understood them as charging larceny, and such understanding might fairly have been received from the words, it would prevent a non-suit, and make it necessary for the jury to inquire, did the defendant use the words in the offensive sense in which the hearers understood them?" In this case the language quoted above, from *Davis* v. *Johnston, supra,* is repeated with approval.

It seems to us, therefore, that the Circuit judge erred in instructing the jury, as matter of law, that the words "whorish bitch," were not substantially the same as those laid in the complaint, and that it should have been left to the jury to say whether those words were used in the sense of those contained in the complaint, and whether they substantially conveyed the same imputation.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.