## 11985

### MILES v. RECORD PUBLISHING CO.

#### (133 S. E., 99)

1. TRIAL.—Matter of "proof" of damages is question for jury.

2. TRIAL.—Issue of absence of evidence tending to establish cause of action is matter of law for Court.

3. LIBEL AND SLANDER—CHARGES IN PUBLICATION THAT MILKMAN EMPLOYED BY DAIRY WAS IMPORTER OF GERMS, WHICH HE HAD TRANSMITTED TO MILK, HELD LIBELOUS PER SE.—Charges contained in publication that milkman employed by dairy was importer of germs and had transmitted germs to milk, which he handled, *held* libelous *per se,* and such as did not require proof of any damages, general or special, since they are presumed as a matter of law.

Before WHALEY, J., Richland, November, 1924. Affirmed.

Action by Charles Miles against the Record Publishing Company. Judgment for plaintiff, and defendant appeals.

*Mr. Ashley C. Tobias,* for appellant, cites: *Plaintiff in action for defamation must prove every material allegation:* 72 So., 428; 62 So., 597; 37 C. J., 55. *Preponderance of proof in action for defamation:* 37 C. J., 69. *Damage must be shown to result from conduct complained of:* 12 Barb. (N. Y.), 662; Sutherland on Damages, 4560.

*Mr. James H. Hammond,* for respondent, cites: *Publication libelous per se:* 25 Cyc., 326. *Newspaper not privileged to publish defamatory matter:* 9 Rich., 313;

A. & E. Ann. Cas., 1917-B, 402; Ann. Cas., 1917-B, 442; 25 Cyc., 405.

May 13, 1926.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for damages on account of the publication of an alleged libel against the plaintiff.

In May, 1924, the City of Columbia was threatened with a serious epidemic of typhoid fever. The board of health took prompt and vigorous action to discover the cause and stamp it out. It was discovered that many affected with the disease were customers of a particular dairy near the City, operated by one R. C. Watkins, and in which the plaintiff Miles was working as a milker, having recently been employed to do that work. Pending an examination of the premises and of the persons there employed, the state health officer, on May 23d, ordered the dairy closed. On the night of that day, the city health officer, accompanied by Watkins (the proprietor of the dairy), and the health inspector, visited the homes of about 100 of the customers of the dairy, notified them of the closing of the dairy, and directed them to be inoculated against typhoid fever immediately. On the following morning he visited the remaining customers of the dairy, advising them of his action. He immediately instituted a clinic which he continued for three days a week up to July 1st, approximately five weeks. He put all of the public health nurses on duty, divided the city into districts, and requested every person who had patronized the dairy to be inoculated. About 3,000 persons were inoculated. He forbade the proprietor of the dairy from handling milk which was to be sold in the City, and his milker from handling milk until he had been subjected to an examination and received a certificate of health. The dairy was allowed to reopen, on May 27th, and the plaintiff was allowed to resume his occupation, although he did not

receive a certificate of health until June 3d. The plaintiff finished out the week with Watkins, the dairyman, and on account of the falling off of customers Watkins let him go.

In the meantime, on May 25th, two days after the dairy was closed, the defendant published an account of the sensation naturally created by the circumstances above detailed, in commendation of the energy with which the health department had grappled with the situation, and manifestly to allay public feeling about the matter. In the article, however, was the following statement:

"The investigators found out as another detail of the case, that the milk had become contaminated almost overnight, as a new milker, who was in charge of the dairy for the regular milkman who was ill, was the 'importer' of the germs. Working the investigation down to the finest possible point, the health authorities located the source of the germs, which the new milkman had unknowingly transported to his new work."

The plaintiff alleged in his complaint that he was the "new milkman" referred to in the article (as to which there appears no doubt) ; that by reason of the publication of such false statement "he had lost his position as a milker, and could not obtain employment at other dairies, and also alleging that he had been held up to the public as person to be shunned and avoided and almost ostracized" (quoting from the printed brief of the respondent's counsel). "As a defense, the defendant alleged, among other things, the admission of the article as published, but that its business was that of a newspaper to render a fair account of matters of public interest; that the publication was in fulfillment of a public duty with reference to matters of public interest; that the publication was made upon information reliably received and with the earnest belief in its truth and without malice, for the purpose of performing its duty in furnishing news to its subscribers; and that the publication was substantially true and correct. The answer further denied,

generally, that the plaintiff had suffered any damages because of the publication" (quoting from the "Agreed Case"). The case was tried before his Honor, Judge Whaley, of the Richland County Court, and a jury, in November, 1924. At the close of the evidence for the plaintiff, the defendant moved for a nonsuit upon the ground that the plaintiff had proved no damages, the testimony not sustaining the plaintiff's allegation of damages. The motion was overruled. At the close of all of the evidence, the "Case" shows: "A motion was made for a directed verdict by the defendant, which was refused." The jury rendered a verdict in favor of the plaintiff for $850, which on motion for a new trial was reduced, by an order *nisi* and remission by the plaintiff, to $600. From the judgment entered upon this verdict, the defendant has appealed.

The first exception is as follows:

"That his Honor, the presiding Judge, erred in not granting a nonsuit, the plaintiff having proved absolutely no damages, the testimony not sustaining the plaintiff's allegations of damages."

Passing by the patent inaccuracy in the form of this exception (the matter of proof being one for the jury, the issue of the absence of evidence tending to establish the plaintiff's cause of action being a matter of law for the Court, and the proper form of the exception), we think that the motion was properly overruled for this reason: The charges contained in the publication that the plaintiff was an "importer of germs," a germ carrier, and had transmitted the germs to the milk which he handled, were libelous *per se,* and as such did not require the proof of any damages, general or special; they are presumed to result as a matter of law. They are libelous upon two grounds: (1) They impute to the plaintiff a physical condition which would necessarily cause him to be shunned and avoided by society. (2) They are calculated to seriously affect his business or employment by imputing to him a

want of fitness for engaging in the same. 17 R. C. L., 294; 36 C. J., 1167, 1180; *Davis v. Davis,* 1 Nott & McC., 290.

The second and third exceptions are not properly before the Court, as the "Case" discloses no grounds upon which the motion for a directed verdict was made; but if in a condition for consideration, it is manifest that, for the reasons stated in sustaining the order refusing a nonsuit, this motion could not have prevailed.

In justice to the plaintiff, it should be emphasized that the defendant made no effort to justify the charge; on the contrary, the city health officer completely dispelled the suspicion.

The judgment of this Court is that the judgment of the County Court be affirmed.

MESSRS. JUSTICES WATTS, BLEASE and STABLER and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MR. CHIEF JUSTICE GARY did not participate.