13575

GATHINGS v. GREAT ATLANTIC & PACIFIC TEA CO.

(167 S. E., 652)

*Messrs. Haynsworth & Haynsworth,* for appellant,

*Mr. J. Robert Martin,* for respondent,

February 6, 1933.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for damages on account of certain alleged slanderous statements made concerning the plaintiff by an agent of the defendant. The plaintiff, who had been for some time the manager of the defendant's Hampton Avenue store in the City of Greenville, was transferred, in February, 1930, to its West Greenville store. The third paragraph of the complaint states the offense charged: "That on or about February 20th, 1930, a short while after above transfer was ordered, and while plaintiff herein was in charge of defendant's West Greenville Store, the Superintendent and General Manager throughout this section entered said store and spoke to plaintiff in the presence of customers therein at said time, asking if State authorities had inspected that particular store that day and further stated that they had inspected store from which plaintiff was transferred and found short weights and had a case against plain-

tiff for short weights and that he, the said General Manager, would have to discharge plaintiff for such conduct while in charge of Hampton Avenue Store, charging and accusing publicly the plaintiff herein of perpetrating a fraud on the trading public all of which was slanderous and maliciously spoken and done, and at other times said agent of defendant spoke similar words thereto concerning plaintiff and by the speaking of said false and defamatory words and making said accusations, false and untrue of plaintiff, plaintiff has been injured in his reputation, humiliated, and suffered damages in the sum of Three Thousand ($3,000.00) Dollars."

The defendant entered a general denial, and, as a further defense, alleged that it had "long been the practice of the defendant corporation, in order to facilitate business with its various customers, to have its employees, during slack periods of trade, put up certain staple articles of food, such as flour, sugar, etc., in small packages with the weight indicated on each package, and that this practice had been in force at the various stores in this district"; and that shortly after plaintiff's transfer from the Hampton Avenue to the West Greenville store, the State authorities visited the former store and found certain packages of goods to be slightly overweight or slightly underweight, which constituted technical violations of the statute governing weights and measures; and denied that its assistant superintendent or general manager, at any time or place, had charged plaintiff with fraud or criminal intent, or with perpetrating a fraud upon the public, specifically alleging that all statements made by its superintendent to plaintiff with reference to any underweights or overweights were made in good faith, such errors being attributable to carelessness or inadvertence in the putting up and weighing of the packages. It also alleged that J. L. Creed, the assistant superintendent of the defendant, realizing that such errors would constitute a source of embarrassment to the company and its employees, called a conference of the store managers, to be held in Greenville

on February 20, 1930; "that at this conference the principal subject of discussion was the prosecutions that had been started against the managers of said stores, and the methods by which errors in weight could be avoided; that the said J. L. Creed urged upon the store managers to exercise great vigilance and caution in order to prevent errors of this kind and charged them with the duty of seeing, personally, that each package was correctly weighed and marked; that in the course of discussion at said meeting, the said J. L. Creed did not intend, by any of his remarks, to charge plaintiff with fraud or criminal intent, and such statements made by him were, in fact, true"; that the assistant superintendent later visited the West Greenville store, then under the management of plaintiff, and found that the store and stock of goods were not being kept in order and with the neatness required by the rules of the company; and that in these circumstances the plaintiff was discharged upon the ground of carelessness and negligence in the conduct of the business.

On trial of the case in the Court of Common Pleas for Greenville County, November 9, 1931, the jury found for the plaintiff $2,000.00 actual and $400.00 punitive damages.

The appeal involves three exceptions, all of which relate to alleged error in the Court's instructions to the jury. These we will now consider.

The plaintiff's fifteenth request, charged by the Court, was as follows: "The action of slander is intended not only to recompense a plaintiff for an injury done to his character, but also to punish the defendant for his malice. Any evidence which shows that the slander has been again and again repeated is competent to prove malice. The greater length of time in which the defendant has repeated his publication, evidences that his words have not been the result of passion and shows a deliberate purpose to injure plaintiff."

The contention of the appellant is that this was a charge on the facts, being "the equivalent of saying that any evidence of repetition of the slander is malice, and the greater

length of time in which the slander is repeated is evidence that the words are not the result of passion, and practically directs the jury to find that if there was a repetition over a period of time, they must infer from this 'a deliberate purpose to injure plaintiff.' It was not left with the jury to say whether the repetition was malicious." The respondent argues that, when the charge is read as a whole, it will be seen that there was no prejudicial error; that no practical juror could take the excerpt complained of, associated with other portions of the charge, and conclude that the trial Judge expressed any opinion on the facts; and that the entire request refers to the general law pertaining to proof of malice by evidence of repetition of slanderous words, and only instructs the jury that evidence of such repetition—leaving to them to say if there was repetition—is competent to prove malice.

In *Norris v. Clinkscales,* 47 S. C., 488, 25 S. E., 797, 806, will be found a full discussion of what is meant by the provision of the Constitution, Section 26 of Article 5, that "Judges shall not charge juries in respect to matters of fact, but shall declare the law." The Court said, *inter alia:* "A Judge violates this provision when he expresses in his charge his own opinion upon the force and effect of the testimony, or of any part of it, or intimates his views of the sufficiency or insufficiency of the evidence in whole or in part."

The charge here objected to is taken from the opinion of the Court in the case of *Morgan v. Livingston,* 2 Rich., 584. In that case the appellant moved the Court for a new trial on the ground that the Judge had committed error in admitting, over objection, evidence of slanderous words uttered more than two years before the commencement of the action. On appeal the Court, in disposing of an exception to the admission of this testimony, used the language charged by the trial Judge in the case at bar; but did not pass upon its correctness as a charge to the jury. The difference is manifest.

In the case before us, the presence or absence of actual malice and a deliberate purpose on the part of the defendant to injure the plaintiff, was a vital issue, made by the pleadings and the testimony. If the jury concluded that the alleged slanderous words were repeated time and again, this was a fact from which they could infer malice; but whether there was a repetition of such words, and whether the inference of malice should be drawn from their repetition, were questions for them. The language used, that the repetition "evidences that his words have not been the result of passion and shows a deliberate purpose to injure plaintiff," was clearly a charge upon the facts, in violation of the constitutional provision above quoted. It was tantamount to telling the jury that repetition of the slander was in itself malicious, and that, if they found that the defendant repeated the alleged slanderous statements, then they should find that it intended to injure the plaintiff. In other words, the jury were told what inferences should be drawn by them from the testimony. It is true, as pointed out by the respondent, that the trial Judge stated to the jury in his general charge that the facts were entirely for them, still we do not think this cured the error. As indicated in *China v. City of Sumter,* 51 S. C., 453, 29 S. E., 206, 209, the respondent's view cannot be accepted, "for if, as we have seen, the real object of this constitutional provision was to leave all questions to the jury, to be decided according to their own judgment, unbiased by any expression, or even intimations, of opinion from the Judge, it is manifest that such object would be defeated if a Circuit Judge should be allowed to express his own opinion upon any material question of fact, and then undertake to wipe out the impression made upon the minds of the jury by telling them that all questions of fact were for them."

However, as the repetition of slanderous words may be shown only for the purpose of establishing malice, from which punitive damages might arise, this re-

quest of plaintiff bore only such question. As we cannot say to what extent this erroneous charge affected the mind of the jury in fixing the amount of punitive damages awarded, the exception raising this question is sustained so far as the judgment as to such damages is concerned.

The appellant also complains that the trial Judge was in error in charging plaintiff's sixteenth request, as follows:

"Where the truth is pleaded in justification, failure to sustain the plea by proof may be construed by a jury as an aggravating circumstance in estimating damages."

"In action of slander of words imputing a crime to the plaintiff, the defendant, to support a plea of justification, must produce a record of conviction of the crime so imputed, or else show the plaintiff's guilt by evidence sufficient to convict him if on trial for such crime; otherwise, the jury must find for plaintiff. A mere preponderance of evidence is not sufficient to sustain the plea. * * * Now, when the defendant undertakes to justify by saying that it is true, then the defendant must prove the truthfulness of that statement, must be such as would enable a jury to convict the person of the crime charged if he were on trial for it. That is, the defendant must prove the charge beyond a reasonable doubt, instead of by the greater weight or preponderance of the evidence."

It is urged that this charge was misleading and prejudicial for the reason that the "plea of justification was not made in the answer, or on trial."

In order for a plea of justification to be good, it must allege the truth of the words used in the sense imputed to them by the complaint; so "where the innuendo imputes to the facts a charge involving dishonesty, corrupt or criminal intent," the plea must allege not simply the literal truth of the facts but their truth according to the intent imputed to them. See Newell on Slander and Libel, page 766; *Duncan v. Record Publishing Company,* 145 S. C., 196, 143 S. E., 31.

Tested by this rule, it is clear that in the instant case the plea of justification was not made in the answer. As already indicated, the complaint specifically alleged that the words used by the defendant's general manager with reference to short weights charged the· plaintiff with perpetrating a fraud on the trading public, while the answer, in effect, alleged that all such words were spoken in good faith, charged the plaintiff only with carelessness or inadvertence, and were true in that sense—not in the sense imputed to them by the plaintiff.

In *Gill v. Ruggles,* 95 S. C., 90, 78 S. E., 536, 540, which was a very similar case, the Court construed the answer to mean that while the defendant denied using the words imputed to him, yet he was justified in using whatever language he did use, and added: "But the allegation was not clear, and it was manifestly understood by the counsel for plaintiff and the Circuit Judge as an unqualified plea in justification. This is clear from plaintiff's request to charge as well as the charge itself. Seeing that the Judge misunderstood the pleading and was charging on an issue not made by the answer, it was incumbent on defendant's counsel to call the Court's attention to its mistake. This was not done, and it is well settled that new trials will not be granted in such circumstances."

So, in the case at bar, it is evident from plaintiff's request, charged by the Judge, as well as from several other statements in the charge, that both the trial Judge and counsel for plaintiff understood that the answer made an unqualified plea in justification; and it was incumbent upon defendant's counsel to call the Court's attention, at the time the charge based on such plea was given, to the fact that no such plea was made. Defendant's counsel urges, however, that he was not bound to direct the Court's attention to the error, for the reason that the rule applies only when such errors are inadvertently made, while in the present case the record shows that the error was not inad-

vertent, the trial Judge having been fully apprised, during the trial, of defendant's position. It is true that during the trial defendant's counsel stated to the Court that no charge was made against the plaintiff except as to carelessness; that while it was alleged he had made mistakes, he was not charged with making them fraudulently. But it is also true that the defendant pleaded, and attempted to prove, the truth of certain statements with a certain imputed sense, such statements being practically the same as those set up in the complaint. In fact, the only material difference between the plaintiff and defendant with reference to the use of the words, relates to the sense in which they were used or the impression which they would convey to one hearing them. In all the circumstances, we do not think that the statement made by defendant's counsel during the trial was sufficient to relieve him of the duty of directing the Court's attention, while the charge was being made, to any error in the statement of the issues to the jury. The exceptions making this question are without merit.

The defendant also excepts to so much of the order of Judge Rice, settling the case for appeal, as required that the testimony of all witnesses, except Cashion, McKinney, Collins, and Parker, with exhibits, be printed in the record, in question and answer form. The record for appeal, as proposed by the defendant, contained the testimony of the plaintiff and two of his witnesses, Langley and Grey, and the testimony of the defendant's witness, J. L. Creed, all in narrative form, but did not contain any other testimony or any exhibits. The contention is that the record, as thus proposed, contained all matters essential for the hearing of the appeal, as the exceptions relate only to alleged errors in the Judge's charge and require consideration only of the general nature of the testimony.

Judge Rice, in settling this question, said: "It appears from appellant's second exception that the contention is * * * that no plea of justification is made by answer

or on trial. From a review of the evidence which is before me, I find that there was evidence *pro* and *con* upon this issue from all the witnesses at the trial, with the exception of W. F. Cashion, Ford McKinney, Clarence Collins and E. R. Parker, and to give the Supreme Court a proper conception of the issue raised, it is necessary to have this evidence before it."

We conclude that it was unnecessary to have all the testimony in the case printed in the record for appeal. The testimony of the witnesses named by the appellant in its proposed case would have been sufficient for the use of this Court in determining whether the plea in justification was made, by the evidence, an issue "on trial"; the other testimony ordered reported is, on this point, a duplication, in a measure, of the testimony of these witnesses. Nor do we think that the printing of the exhibits was at all necessary to the decision of any question raised. This appeal, therefore, is sustained, and it is ordered that the respondent be required to pay for the printing of all exhibits and the testimony of all the witnesses except that of W. M. Gathings, L. G. Langley, J. R. Grey, and J. L. Creed.

As to the main appeal, the judgment of the Circuit Court is affirmed as to actual damages, and reversed as to punitive damages.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.