12524

PIERCE v. INTER-OCEAN CASUALTY CO.

(145 S. E., 541)

*Mr. Frank G. Tompkins,* for appellant,

*Messrs. E. J. Best,* and *J. B. McLauchlin,* for respondent,

November 16, 1928.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for damages on account of an alleged libelous letter written by an agent of the defendant company, under date of March 9, 1925, to the law firm of Pierce & Lester, of which the plaintiff was the senior partner; a copy of the letter being sent to the State Insurance Commissioner. That part of the letter particularly objected to by the plaintiff is as follows:

"And it seems that some of these negroes through your influence are having their policies canceled. * * * Likewise we do not think you as attorneys should encourage policyholders to try to take advantage of this or any other insurance companies."

The plaintiff alleged, among other things, that the above language was libelous and maliciously false, that it charged her with conduct contrary to law, good morals, and honest

dealing, and that it tended to impair and destroy the confidence and esteem in which she was held in her business, reputation, and profession as an attorney.

The defendant admitted the writing and mailing of the letter, but denied that there was any intention to reflect upon the character of the plaintiff, and alleged the belief that the language used was not libelous.

The case was tried in the County Court for Richland County on October 5, 1926. At the close of all the testimony, defendant's motion for a directed verdict was refused The jury found for the plaintiff in the sum of $1,000 actual damages. The defendant appeals, and imputes error by a number of exceptions.

I agree with Mr. Justice Cothran in his disposition of the exceptions alleging error on the part of the trial Judge in refusing to direct a verdict for the defendant. The language used in the alleged libelous letter was of a defamatory character, charging the plaintiff with dishonest dealing and unprofessional conduct, and clearly actionable.

I dissent, however, from the conclusion arrived at that, because of alleged error in the admission and exclusion of certain testimony, the judgment should be reversed and a new trial ordered, and will state briefly my reasons therefor. When the plaintiff was on the stand, the trial Judge, over objection of the defendant, permitted her to testify, in substance, as appears in the record:

"These people came to her, claimed that they had been overcharged and wanted their policies canceled and money refunded. She took the matter up with the company by letter, who finally agreed to refund the money to Clarence Stitt and Robert Eggister, which they did. Several days afterward, five others came in within a few days of each other, one at a time, with the same complaint, some saying that they had been to the insurance commissioner about it and had obtained no relief. She had a lot of correspondence with the company about it, and they would send copies of

their letter to the insurance commissioner, who would reply sending a copy of his letter to the plaintiff, and finally she received the letters set out in the complaint."

Defendant's counsel, while correctly stating that "the case of *McLeod v. American Publishing Co.*, 126 S. C., 363, 120 S. E., 70, holds that Courts are more liberal in the admission of evidence in cases of libel and slander than in other cases and that the trial Judge is vested with a large discretion, both as to competent testimony and the amount of testimony," contends that this testimony was so clearly beyond the scope of the issues involved as to be highly prejudicial and that the Court abused its discretion in admitting it. The Court said:

"If I go by the correspondence, that part of it as set out in the complaint, she alleges here that what they wrote her was false and maliciously false. That goes into the gist of the libel action, so I can go back and rule on that other question. She is entitled to show how she handled these claims in order to show whether or not this language was false. They charge her here with using her influence in having their policies canceled and encouraging policyholders to try to take advantage of this insurance company and other insurance companies. She is entitled to show whether that language was false or not so that the Court, when it has to consider this language, will have to consider it in the light of that. If it goes to the jury, they are entitled to have it in the light of that also, because otherwise we might not be able to get at whether the language is false or not. She alleges that. It is one of the main issues in the case. As I see it, she is entitled to go into the general issues surrounding these claims, how she handled them and why."

The language of the letter charged the plaintiff with ■ influencing some of the defendant's negro policyholders to cancel their policies, and, by clear intimation, that she was encouraging policyholders to take advantage of the defendant and other insurance companies; the

plaintiff pleaded that these charges were false—maliciously false. As pointed out by the trial Judge, the truth or falsity of the charges was one of the main issues in the case, and the testimony offered by the plaintiff and admitted by the Court was competent as tending to prove the allegation. "Although the falsity of defamatory matter is presumed, it is competent for plaintiff, if he so desires, to offer affirmative evidence showing its falsity." 37 C. J., 86. The contention that the trial Court abused its discretion in admitting this testimony is without merit.

When Briggs, a witness for the defendant, was on the stand, he stated that he remembered that some of these men claimed that the terms of the policy had been misrepresented to them, but that he had not misrepresented them. The Court, however, did not allow counsel for the defendant to question the witness as to whether or not he had misrepresented the terms of these policies in writing them, stating the reason for its ruling to be:

"Whether he did or didn't makes no difference as far as these issues are concerned. The truth of that charge has nothing to do with the material facts in this case. But the statements that those statements were made that they were misrepresentations has something to do with it, in that it comes in as showing the surrounding circumstances that Miss Pierce dealt with these people on the fraud charge, but the truth of the charge has nothing to do with it."

The refusal of the Court to admit the testimony is made the basis of an exception, the appellant contending that it was relevant and competent in reply to certain of testimony given by the respondent. This contention is without merit. The testimony of the plaintiff was to the effect that some of her clients had told her that misrepresentations had been made to them, and that they had been overcharged and desired to have their policies canceled. The plaintiff did not testify as to the truth of these statements and Briggs' testimony was not intended to contradict any statement declared

by her to be a fact; its purpose was not to disprove the truth of the alleged libelous charge, but simply to inject into the case a question of veracity as between the defendant's witness Briggs and the plaintiff's clients, which could in no way throw any light upon the main issue of the case, and was, therefore, incompetent and properly excluded. In 17 R. C. L., at page 403, we find:

"The rules determining the admissibility or competency of evidence in civil actions generally are applicable in actions for the recovery of damages for libel or slander, and testimony in such actions is properly rejected which contravenes the fundamental rule that evidence shall be confined to the issues. Thus it has been held that one suing for slander in being charged by another with setting fire to his building cannot be permitted to testify that he never made threats to burn the building, for the purpose of contradicting witnesses who have testified that they communicated to the defendant, before the fire, the fact that they had heard the plaintiff make such threats. Such evidence would inject into the case a question of veracity which would throw no light on the issue to be tried."

The appellant also complains that there was error in the admission of the following letter written by the insurance commissioner to the insurance agency, dated January 23, 1925, a copy of which was sent to the law firm of the respondent:

"RE ROBERT EGGISTER

"I had hoped that we had reached the end of these complaints against your policies, but I have this day received a letter from lawyers for this insured. I inclose the letter.

"It appears that at his request, I wrote you and returned his policy some time ago, but that you have refused to cancel it and have continued to deduct from his wages.

"It should be cancelled as of the date of my letter and any collection after then, refunded."

What I have said with respect to the admission of plaintiff's testimony objected to applies here. Under the allegations of the complaint, the falsity of the language used in the alleged libelous letter was one of the main issues in the case. The plaintiff was not required to prove her allegation as to its falsity, but might do so affirmatively if she so desired. The purpose of introducing in evidence the letter written by the insurance commissioner with respect to Robert Eggister was to show the alleged falsity of the statement made in the alleged libelous letter that Miss Pierce had used her influence to secure the cancellation of policies held by negro policyholders of the defendant, and was competent testimony to go to the jury as tending to prove her allegation that this language was false.

I do not deem it necessary to go into the other assignments of error. I have examined them, and find them to be without merit.

This opinion being concurred in by Justices Blease and Carter, becomes the judgment of the Court, which is that all exceptions be overruled and the judgment of the County Court of Richland County be affirmed.

Messrs. Justices Blease and Carter concur.

Mr. Chief Justice Watts did not participate.

Mr. Justice Cothran (dissenting): Action for libel. The basis of the action is a letter written by an agent of the defendant company to the law firm of Pierce & Lester, of which the plaintiff was a member, a copy of which was mailed to the insurance commissioner of the State. It is alleged that the letter contained libelous, defamatory, false, and malicious matter, and was meant to charge the plaintiff, a practicing attorney in the City of Columbia, with unprofessional and unethical conduct.

The defendant admitted the writing and mailing of the letter, but denied any intention to reflect upon the plaintiff. The portions of the letter to which the plaintiff objected were:

"And it seems that some of these negroes through your influence are having their policies canceled. * * * Likewise we do not think you as attorneys should encourage policyholders to try to take advantage of this or any other insurance companies."

The case was tried before his Honor, Judge Whaley, in the County Court of Richland County. At the close of all of the evidence the defendant moved for the direction of a verdict in its favor upon the grounds:

"(1) That the language proven in the letter of March 9, 1925, and quoted in the complaint, is not libelous, and the context of the letter shows that it was not so intended. .'

"(2) That the plaintiff by her subsequent correspondence and action in the matter did not so construe the letter.

"(3) That there is an entire absence of any malice on the part of the defendant or any one acting for them in it.

"(4) That no reasonable inference can be drawn from the testimony, except that the language used was not in itself libelous and was not so intended by the defendant or so construed by the plaintiff at the time."

The motion was refused. The jury rendered a verdict in favor of the plaintiff for $1,000 actual damages. The defendant moved for a new trial upon the grounds:

"(1) That the jury, by their failure to find punitive damages herein, have negatived the existence of any malice or willfulness in this case, and the words used not being libelous *per se* would not support the finding of damages for the plaintiff.

"(2) That there was no evidence that the plaintiff suffered any damage whatsoever by reason of the alleged libel.

"(3) That the great preponderance of the evidence showed that the plaintiff had suffered no damage whatsoever by reason of the alleged libel. '

"(4) That the damages herein were grossly excessive, as there was not only no evidence to support any damages, but if the damage could be presumed, there were no facts

in the case which would authorize so large a sum as that found herein."

The motion was refused. From the judgment entered upon the verdict, the defendant has appealed, presenting by exceptions the following questions:

(1) Did the presiding Judge err in the admission and exclusion of certain testimony and letters?

(2) Did the presiding Judge err in refusing appellant's motion for a directed verdict upon the four grounds set forth in the record?

(3) Did the presiding Judge err in his ruling and statement before the jury as to the issues involved and in his charge to the jury?

(4) Did the presiding Judge err in refusing appellant's motion for a new trial upon the first and second grounds thereof as set forth in the record?

Before discussing the questions thus raised, a brief statement of the undisputed facts may lead to a more intelligible solution of them:

It appears that the defendant company was doing business in Cincinnati, Ohio, and was operating in South Carolina through a corporation styled "Railroad Employees' Insurance Agency Company," located in Washington, D. C. Of this last-named corporation one J. B. Cleland was president. Quite a number of casualty insurance policies had been issued through the Cleland agency to colored railroad employees in and around Columbia. Dissatisfaction with their policies arose among the policyholders, based upon alleged misrepresentations made by the agents of the company, and a number of them employed the law firm of Pierce & Lester to have their policies canceled and their money refunded. It was in the course of correspondence between them and the company that the letter of the president was written.

The most important question in the case is whether the expressions used in the Cleland letter are libelous. They were made in reference to an attorney who was engaged in en-

deav.oring to enforce the rights of her clients as she and they considered them; they charged her with practically setting up false claims for them, which she suggested and induced; a breach of honest dealing and professional integrity, and unquestionably were actionable. In *Davis v. Davis,* 1 Nott & McC., 290, the syllabus is:

"Any words spoken of a person in relation to his trade or profession, which tend to impair his credit, or which charge him with fraud or indirect dealing, are actionable."

Reaffirmed in *Morgan v. Livingston,* 2 Rich., 573; *Miles v. Record,* 134 S. C., 462, 133 S. E., 99, 45 A. L. R., 1112; *Williamson v. Askin & Marine Co.,* 138 S. C., 47, 136 S. E., 21. See also *Riley v. Askin & Marine Co.,* 134 S. C., 198, 132 S. E., 584, 46 A. L. R., 558; 36 C. J., 1167, 1180, 1184, 1215; 25 Cyc., 326–333; 23 C. J., 79; 17 R. C. L., 294.

Error is assigned in the admission of a letter from Cleland to the insurance commissioner, a copy of which was sent to the plaintiff, dated March 18, 1925, after the letter containing the alleged libelous matter. This letter was a justification of Cleland in his dealing with a different policyholder from the one about whose policy the letter of March 9th was written. It should not have been admitted, but I find in it nothing of which the defendant can complain.

Error is assigned in the admission of the following letter from the insurance commissioner to the Cleland Agency, dated January 23, 1925:

#### "RE ROBERT EGGISTER

"I had hoped that we had reached the end of these complaints against your policies, but I have this day received a letter from lawyers for this insured. I inclose the letter.

"It appears that, at his request, I wrote you and returned his policy some time ago, but that you have refused to cancel it and have continued to deduct from his wages.

"It should be canceled as of the date of my letter, and any collection after then refunded."

This letter had no bearing on any of the issues in this action. It was plainly put in to attempt to show that the insurance commissioner was censuring defendant's agent, Railroad Employees' Insurance Agency, about another matter, and its only purpose was to wrongfully prejudice the jury against the defendant.

This exception should be sustained.

Error is assigned in allowing the plaintiff to testify as to what certain negro clients of hers told her about the policies of insurance in question, in that the same was incompetent and prejudicial to appellant's case. The substance of this testimony was that certain negro clients of hers told Miss Pierce that they had policies with the Inter-Ocean Casualty Company, that they had been overcharged in the matter of premiums, and that they wanted their policies canceled and money refunded. While the case of *McLeod v. Publishing Co.*, 126 S. C., 363, 120 S. E., 70, holds that Courts are more liberal in the admission of evidence in cases of libel and slander than in other cases, and that the trial Judge is vested with a large discretion, both as to competent testimony and the amount of testimony, yet I think that this testimony was beyond the scope of the issues involved in this action, highly prejudicial, incompetent and irrelevant, and that his Honor in admitting the same in evidence, committed error.

Error is assigned in refusing to allow the witness J. C. Briggs to testify whether he misrepresented the terms of the policy to any of the negro clients of the respondent in question, in answer to the testimony already let in, that they had stated to her that he had, in that the same was detrimental to the interest of the appellant and prejudicial to its case, and the same was competent in reply to the testimony already let in for the respondent. The trial Judge had already allowed, over the objection of the appellant, respondent to testify concerning the nature of the complaints made to her by certain of her negro clients, about the policies of insurance having been fraudulently misrepresented and procured

through fraud, as a part of the surrounding circumstances or extraneous matters existing at the time that the alleged libelous letter of March 9th was written, in accordance with the allegations contained in paragraph 2 of the complaint. The nature of this testimony and surrounding circumstances charged the appellant company or its agents with fraud in the procuring of these policies, and the nature or substance of the testimony excluded by his Honor, and made the basis of this exception, would have denied such alleged fraudulent misrepresentation as to the terms of the policies of these negroes, and the alleged fraudulent procuring of same by the witness Briggs who solicited and wrote them. I think that under the circumstances the testimony should have been received. *Sheriff v. Cartee,* 121 S. C., 143, 113 S. E., 579; Newell on Sland. & Lib. (4th Ed.), 574.

For the errors indicated, the judgment should be reversed, and a new trial ordered.

MR. ACTING ASSOCIATE THURMOND (dissenting): The action in this case was brought in the County Court of Richland County by service of summons and complaint upon the insurance commissioner of South Carolina, on July 1, 1925, and the plaintiff in her complaint charges the defendant with writing a letter which contained language libelous, defamatory, false, and malicious, and meant to charge, and did charge, the plaintiff with unprofessional and unethical conduct, in the practice of her profession, etc.

The defendant interposed an answer containing a general denial, and sets up that it was not the intention on the part of the said agency company or its employees to reflect upon the character of the said firm of Pierce & Lester, or either of them, and such language was not so taken by them, or by the insurance commissioner to whom copies of the same were mailed, and, further, that any libelous language that was used by the agency company, or its agents, or servants, if such was used, was unauthorized by the defendant and without the scope of the authority of the said agency company, or its

agents or any one else, and, further, that the defendant disavows any knowledge of letter alleged contained the libelous, defamatory, false, and malicious language until after the institution of this suit.

The complaint reads as follows:

"(1) That at the time hereinafter mentioned plaintiff was a licensed practicing attorney in the State of South Carolina, and engaged in the practice of her profession.

"(2) That at the time hereinafter mentioned the defendant was engaged in the general insurance business and indemnifying persons against accidental injuries and providing benefits for loss of time by sickness, etc.; that the plaintiff herein in pursuance of the practice of her profession represented John Harper in a' claim by him against the said defendant insurance company and while the matter in dispute was pending between the said plaintiff and the said defendant for settlement and adjustment, the said defendant on March 9, 1925, wrote a letter to the plaintiff and mailed, published, and circulated a copy thereof to Hon. John J. McMahan, the insurance commissioner, Columbia, South Carolina; that said letter, among other things, referring to the plaintiff, used the following language: 'And it seems that some of these negroes through your influence are having their policies canceled. * * * Likewise we do not think you as attorneys should encourage policyholders to try to take advantage of this or any other insurance companies.'

"(3) That the language contained in the letter above-quoted was received by the plaintiff and by Hon. John J. McMahan, insurance commissioner, as aforesaid; that the defendant caused the same to be published and circulated of and concerning the plaintiff in the manner above set forth; that the said language above set forth was libelous, defamatory, false, and malicious, and meant to charge and did charge the plaintiff with unprofessional and unethical conduct in the practice of her profession; the said above false,

defamatory, malicious language and charges of and concerning the plaintiff by the defendant also meant to charge and did charge the plaintiff with violation of the ethics of her profession in that it charged the plaintiff with using the influence of her office as an attorney to cause negroes to cancel their policies of insurance, contrary to law, good morals, and honest dealings, and in violation of the solemn contract and agreement made and entered into by said negroes, the clients of plaintff; that the defendants meant to charge and did charge the plaintiff with unprofessional and unethical conduct in the above-quoted language in that the said defendant charged the plaintiff with having encouraged policyholders to try to take advantage of the defendant and of other insurance companies; that the above-quoted language written, published, and circulated of and concerning the plaintiff meant to charge and did charge the plaintiff with fraud, deceit, and of being a moral delict, and guilty of legal and moral turpitude in that said language used aforesaid did reflect upon the character, integrity, and reputation of the plaintiff and brought her into ill repute and did humiliate and embarrass her and expose her to public hatred, contempt, scorn, and ridicule, in that said language as above set forth meant and intended to and did charge the plaintiff with cheating and swindling and did impute a dishonest and fraudulent motive to her, and said language was also calculated and intended to degrade and disgrace plaintiff and subject her to a loss of public confidence and esteem, and said language and charges above set forth did reflect upon, impair and destroy the confidence and esteem in which plaintiff was held in her business, calling, reputation, and profession as an attorney.

"(4) That by the writing, circulating and publication of the above-quoted false, defamatory, malicious and libelous language and charges of and concerning plaintiff as above set forth defendant meant to charge and did charge plaintiff with unethical and fraudulent and unprofessional conduct

as an attorney subjecting her to disbarment as attorney for such violation to her damage three thousand ($3,000.00) dollars."

At the close of the testimony the plaintiff and defendants each made a motion for a directed verdict, but the Court overruled the motions and submitted the case on his charge to the jury which returned a verdict for $1,000, actual damages. Thereafter the defendant made a motion for a new trial on four grounds, which motion was denied by the Court; then within due time the defendant served 14 exceptions.

Exception 1 assigns error to the trial Judge and contends that his Honor charged on the facts and such charge was prejudicial to the defendant. This exception is without merit, as the Court in that portion of the charge referred to the allegations of the complaint.

Exception 2 assigns error to his Honor in allowing a letter written by the defendant to insurance commissioner to be offered in evidence. This letter was not prejudicial to the defendant, and the exception is overruled.

Exception 3 is based on objection to the introduction in evidence of a letter from Mr. McMahan, insurance commissioner, to J. B. Cleland, an officer of the defendant company. This letter referred to the matters out of which this controversy arose, and as well as others tended to elucidate the issues between the defendant company, and the parties represented by the plaintiff, and the writer thinks it was admissible under the case of *McLeod v. American Publishing Co. et al.*, 126 S. C., 363 (Syl. 3), 120 S. E., 70, which holds, "The Courts   *   *   *   are more liberal in the admission of evidence in cases of libel and slander than in other cases," and especially as Mr. McMahan testified and was cross-examined by the defendant.

Exception 4 is based on objection to the testimony of A. J. Smith, concerning the contract of the railroad employees' insurance company with the defendant. The question of agency is ordinarily one for the jury, and as Mr. Smith

testified to the relation between the agency company and the defendant, we think his testimony was competent, and do not see that it was prejudicial to the defendant. Agency may be proven by circumstances. *Salley v. Parker et al.,* 112 S. C., 109, 98 S. E., 847.

Exception 5 is made on objection to the testimony of the plaintiff in relating what negro clients of hers told her about the polices of insurance in question. While the *McLeod case, supra,* does hold that Courts are more liberal in the admission of evidence in libel and slander cases than in other cases, it does not pretend to relax or revoke the well-established rules of evidence to the extent claimed on the issue of the introduction of this evidence. In *Jones v. C. & W. C. Railway Co.,* 144 S. C., 216, 142 S. E., 517, the Court quotes Ruling Case Law on hearsay testimony as follows:

"The reason for this rule of exclusion is that hearsay is not subject to the ordinary tests required by law for ascertaining its truth, the author of the statements not being subject to cross-examination in the presence of a Court of justice, and not speaking under the penal sanction of an oath, there being no opportunity to investigate his character and motives, and his deportment not being subject to observation. And the misconstruction to which such evidence is exposed, from the ignorance or inattention of the hearers, or from criminal motives, is a powerful additional objection."

In *Jowers v. Dysard Const. Co.,* 113 S. C., 84, 100 S. E., 892, the Court held:

"In a subcontractor's action against a contractor to recover for the construction of certain manholes and flush tanks in sewer system, where plaintiff had testified that his work was satisfactory to the city, a report of a city inspector was properly excluded as hearsay."

The defendant was deprived of the right of cross-examination and confrontation of the parties whose statements the plaintiff repeated in her testimony. So it is clear that this hearsay testimony was not competent, and should

not have been admitted, but the inquiry should extend further before reversing the case on that ground, to wit: Was this testimony prejudicial to the defendant? In *Powers v. Rawls,* 119 S. C., 136 (Syl. 17), 112 S. E., 79, held:

"There is a legal presumption that incompetent testimony of some probative force upon a material issue of fact is prejudical."

In the writer's opinion, this testimony was calculated to create prejudice against the defendant in the minds of the jury, and was highly prejudicial and should not have been admitted. This exception should be sustained.

Exception 6 is based on his Honor's exclusion of the testimony of J. C. Briggs that he did not misrepresent the terms of the policy to any of the negro clients of the plaintiff. The plaintiff was permitted to testify that the negroes told her that he had. The charge of misrepresentation is a serious charge, and very much calculated to prejudice the jury against the defendant, certainly if not contradicted.

Under the case of McLeod, *supra,* and under Section 426, Code Civ. Proc., reading as follows:

"In the action mentioned in the last section the defendant may, in his answer, allege both the truth of the mater charged as defamatory, and any mitigating circumstances to reduce the amount of damages; and, whether he prove the justification or not, he may give, in evidence, the mitigating circumstances,"—the writer is of opinion that this testimony should have been admitted, and that his Honor erred in failing to admit it, as it had probative force and effect, and in reply to testimony on the issue raised by the testimony of the plaintiff. This exception should be sustained.

Exceptions 7, 8, 9, and 10 contend that his Honor erred in not directing a verdict for the defendant at the close of the testimony, and those exceptions may be grouped and considered together. It is well to repeat the language complained of, to wit:

"And it seems that some of these negroes through your influence are having their policies canceled. * * * Likewise, we do not think you as attorneys should encourage policyholders to try to take advantage of this or any other insurance companies."

Libel is defined as follows in the case of *Smith v. Bradstreet Co.,* 63 S. C., 530, 41 S. E., 764:

"Libel is malicious defamation, expressed either by writing or printing, or by signs, pictures, effigies or the like, tending to blacken the memory of one who is dead, or to impeach the honesty or integrity or reputation, or publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt, ridicule or obloquy, or to cause him to be shunned or avoided, or to injure him in his office, business or occupation."

In *Williamson v. Askin & Marine Co.,* 138 S. C., 48, 136 S. E., 21, it was held:

"If, taking all words together in their proper meaning, necessary inference is to charge crime, they are actionable."

This case follows *Morgan v. Livingston,* 2 Rich., 573, which held:

It is a well-settled principle that "it is not necessary that the words, in terms, should charge" the crime. "If, taking them all together, in their popular meaning, such is the necessary inference, then there is no doubt that they are actionable."

In *Pegram v. Styron,* 1 Bailey, 595, the action was for slander in the use of the following expression:

"He has sworn to a lie, and I can prove it; and he ought to have his ears cut off; he has perjured himself."

The Court said:

"That was an extrajudicial oath, not in a Court of justice, and one upon which perjury could not be assigned. The words were therefore not actionable, and the motion for a nonsuit is granted."

In *Oliveros v. Henderson,* 116 S. C., 77, 106 S. E., 855, the Court adopted the decree of his Honor, Judge Rice, in which he said:

"In determining whether words are libelous or slanderous, they must be given their ordinary, popular meaning, unless, however, the defendant, at the time such words were used, modifies or explains the meaning which he gives them to mean [as?] something other than their ordinary, popular meaning."

In *James v. W. U. Tel. Co.,* 130 S. C., 533, 126 S. E., 653, an exception assigning error in the refusal of the following request to charge was sustained:

"The Court instructs the jury that, even though the words in question would, from the ordinary meaning of the expression used, imply a crime, yet they are not actionable *per se* as charging such a crime if they were used, and were understood by the readers or hearers to be used, with reference to acts or conduct on which no such crime could be predicated and from which no libelous charge could be inferred."

In *Pegram v. Styron, supra,* it was also held:

"Although the words spoken import a criminal charge, yet if they are explained at the time, or are understood by the persons who hear them, to refer to a matter not criminal, they are not actionable, without special damage."

The opinion states that the words proved were understood by the witnesses to relate to the oath, to any account filed with the administrator of the estate of David Brown, deceased. That case was approved by Judge Freeman in 85 Am. Dec., 491.

In *Bell v. Clinton Oil Mill et al.,* 129 S. C., 242, 124 S. E., 7, it was held:

"A statement to a third person to get word to plaintiff that his company was going to place his account with surety indemnifying company against certain acts of its employees, some of which were not criminal, held not actionable."

In *Hubbard v. Furman University,* 76 S. C., 513, 57 S. E., 479, it was held that the following words were not libelous: "To patrons of the College: You are doubtless aware of the changes made in the College Conservatory of Music. These were made for the good of the department and in the interest of our patrons."

In *McGregor v. State Co. et al.,* 114 S. C., 48 (Syl. 2), 103 S. E., 84, it was held:

"To constitute actionable libel of a retail druggist concerning his business, the writing must have been inspired by malice; it must have tended to impeach the druggist's reputation and injured his business."

Syl. 3:

"An averment that a publication was libelous is a conclusion."

Syl. 4:

"A publication may be false and malicious, but not actionable."

What does the expression "to try to take advantage of" mean, in the words complained of? In order to ascertain the meaning of those words, all of the communications and transactions between the parties must be considered and taken together. Webster's Dictionary defines the word "advantage" as "benefit, gain, profit." So it impresses me that the defendant, by its agent, simply meant that the plaintiff should not deprive that insurance company, the defendant insurance company, or any other insurance company, of any benefit, gain, on profit.

The plaintiff had charged the defendant with misrepresentations in a controversy by letters and it does seem that a party ought to have the right to hit back, or at least to do what the defendant did in this case, protest against the plaintiff's advising its customers to cancel their policies. Having in mind the principles evolved in the cases *supra,* it seems clear to the writer that no inference of the charge of a crime can be drawn from the words complained of as

alleged in the innuendo, and certainly the words themselves do not show a libel *per se,* and the most extreme view of the testimony·in favor of the plaintiff fails to show that those words constitute a libel *per quod.*

Of course, a defamatory libel may be committed against a person in relation to his trade or profession, which tends to impair his credit, or charge him with fraud, or indirect dealing, as referred to in *Davis v. Davis,* 1 Nott & McC., 290, and numerous other cases. But how can the alleged defamatory words referred to in this case be construed as charging the plaintiff with crime, fraud, indirect dealing, or bring upon her disgrace, or even any shadow.

The communications show that the plaintiff represented certain policyholders in the defendant company, which claims that she persuaded them to cancel their polices, and clearly the said communications of the defendant's agent referred to herein applied to the alleged persuasion by the plaintiff of the defendant's customers to cancel their policies in said company, but the plaintiff denied persuading defendant's customers to cancel their policies.

Was this persuasion a crime? Was it a fraud? Was it dishonorable? Could the most strained construction put upon it bring upon the plaintiff discredit, dishonor, or moral turpitude? I think not. As no special damages were alleged, or proved, unless the language complained of alleged a crime, and the testimony established it as a crime, the plaintiff has no cause of action.

In this day of rush, press, and competition, how is a business to protect itself, if it cannot in moderate language enter its protest to the course of conduct of some person calculated to cause it loss of customers and injure it? Is the constitutional right of free speech so curbed as not to give a business charged with wrongdoing the right of self-protection by the use of polite language and earnest entreaty not to do certain acts that would injure the business? I cannot believe it.

The judgment of the lower Court should be reversed, and the complaint dismissed.