14492

LEEVY v. NORTH CAROLINA MUTUAL LIFE INS. CO. *ET AL.*

(191 S. E., 811)

112

July, 1936.

*Mr. N. J. Frederick,* for appellants, cites:

*Messrs. J. Hughes Cooper, A. F. Spigner* and *Edwin H. Cooper,* for respondent, cite:

June 4, 1937.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This is an action for the recovery of damages for slander, brought by I. S. Leevy against North Carolina Mutual Life

Insurance Company and W. H. Harvey. There was a verdict and judgment in favor of the plaintiff against the defendants for actual damages in the sum of $2,000.00, and the cause is before us on appeal from this judgment.

At the time of the trial, and for several years prior thereto, the plaintiff owned and operated in the City of Columbia an undertaking establishment for Negroes. The defendant, W. H. Harvey, is the district manager of his codefendant. It is alleged that while acting within the scope of his agency and authority as manager of the insurance company in the City of Columbia, and while in the active discharge of its business, he willfully and maliciously slandered the plaintiff by stating that the plaintiff was a crook and a thief; that he was not straight in his business, and had been cheating people for years; that these statements were made in the presence of a third person, who was a customer of the plaintiff's undertaking business; and that such statements humiliated the plaintiff, and damaged his reputation and standing in the community, as well as his business from which he derives a livelihood. It is alleged that the statements were made in the office of the defendant in the City of Columbia, and were accompanied by threats on the part of the defendant, Harvey, who intimidated the plaintiff with a pistol, and drove him from the office.

These allegations find support in the testimony.

The defendants generally denied the material allegations of the complaint, and alleged that the allegedly objectionable words were not only qualifiedly privileged, but were justified, and pleaded facts tending to show mitigation.

In his testimony, the defendant, Harvey, admitted that he made the following statements concerning the plaintiff, in the presence of the customer : "He doesn't act straight in all of his business dealings"; "Leevy, I have to do this, because you haven't always dealt straight with the assignments (policy assignments), with us, and I must know these are legitimate assignments"; "I told him that he hadn't dealt

straight with his assignments with the North Carolina Mutual Life Insurance Company."

In explanation of the reference made to policy assignments, the testimony shows that it was the custom and practice of the plaintiff to obtain from the beneficiary an assignment to him of the policy of insurance carried on the life of the deceased whom he was employed to bury. These policies were usually small in amount, and after the assignments were made and the burial effected, the policies would be taken to the office of the defendant by the plaintiff for the purpose of collecting the proceeds thereof, in payment of his bill for services rendered.

By way of justification, the defendants alleged and attempted to prove several instances in which the plaintiff had attempted to obtain money on fraudulent assignments in connection with his business, and charged that the plaintiff had defrauded the Victory Savings Bank of Columbia, a Negro institution, and a number of other creditors when formerly conducting a mercantile business.

The testimony in the case is quite lengthy, and the examination of witnesses protracted.

The particular occasion upon which the alleged slander was uttered came about when the plaintiff went to the office of the defendants, accompanied by a Negro woman, Mary Kincaid Wright (who had employed him to conduct her mother's funeral), in the effort to straighten out and collect an insurance policy on the life of her mother, which had been assigned to the plaintiff by the daughter and several nieces and nephews of the deceased. At the trial, Mary Kincaid Wright testified that on this occasion Harvey told her that he would not pay the money to Leevy, but would pay it to her; that he wished to know her reasons for assigning the policy to the plaintiff, and she told him that she desired Leevy to have the money in payment for his services; that during this conversation between her and Harvey the plaintiff attempted to interrupt, and the defendant pointed his finger at

him and said, "Shut up, I am not talking to you because you are a crook, and you are not straight."

The defendants complain because counsel for the plaintiff, over objection, were permitted to go too far afield in their cross examination of the defendant, W. H. Harvey, and in so doing were allowed to make an improper and irrelevant attack upon his character in the effort to discredit him.

The question arose in this way: The defendant, Harvey, was president of the Victory Savings Bank, in 1931, which bank, like a great many others at that time, was found to be in financial difficulties. Counsel for the defendants, during the course of this examination, objected to questions relating to Harvey's connection with the bank, upon the ground that they reflected on the bank, which is not a party to this action. The trial Judge struck out the testimony relative to the bank which was not relevant and responsive to the issues made in the case. The appellants then raised the issue that such examination was improper as an attack upon the character of the defendant, Harvey, and irrelevant. But counsel overlook the fact that when the plaintiff's attorneys claimed the right to discredit the witness, if they could, by reason of his conduct of the affairs of the bank, the defendant's counsel said, "If you can, that's all right." In addition to this, the record discloses that this witness himself, on his direct examination, by his own testimony, put his reputation and character in issue.

What was said in *A. M. Law & Co., Inc., v. Cleveland,* 172 S. C., 200, 173 S. E., 638, 640, is applicable here: "It would be sufficient to dispose of this exception by saying that much latitude is allowed on cross examination of a witness, and a wise discretion is vested in the presiding Judge to keep the examination in legitimate bounds; and it does not appear that the cross examination here exceeded discreet limits. Moreover, we may say that it was in the main relevant and competent, and in part was induced by questions propounded to the witness by his own attorney."

The appellants contend that their motion for a directed verdict should have been granted upon the ground that the words uttered were not actionable *per se,* and no special damages were alleged or proved; that the spoken words had no relation to plaintiff's business; and that under the testimony it was for the Court to decide as a matter of law whether the spoken words were qualifiedly privileged and whether or not there was malice in the utterance of them.

A careful review of the record' and of applicable authorities convinces us that the trial Judge committed no error with respect to these contentions. These issues were properly submitted to the jury.

Upon the question as to whether the spoken words were slanderous *per se,* the facts in the case at bar differ from the facts upon which the Court based its decision in *Sawyer v. United Cigar Stores,* 180 S. C., 70, 185 S. E., 38, and *Galloway v. Cox,* 172 S. C., 101, 172 S. E., 761. Here, it cannot be successfully contended that there was no evidence to show that the words were spoken of the plaintiff in connection with his business. It is reasonably inferable that the alleged slanderous utterance had direct reference to the plaintiff's business dealings as an undertaker, and strongly tended to prejudice him in that business, if believed.

With reference to the defense of qualified privilege, it is well recognized that in order to recover it must appear from the evidence that the language used was disproportioned in strength and violence to the occasion, or went beyond the exigency of the occasion, or that the occasion was abused to gratify the ill will of the defendant; in other words, that the defendant was acting from actual malice. Strong and violent language or insinuation disproportionate to the occasion may raise an inference of malice and thus lose the privilege which might otherwise attach to the occasion. *Turner v. Montgomery, Ward & Company,* 165 S. C., 253, 163 S. E., 796; *Switzer v. Express Co.,* 119 S.

C., 237, 112 S. E., 110, 26 A. L. R., 819; *Ramsay v. Harrison,* 119 Va., 682, 89 S. E., 977; *Robinson v. Van Auken,* 190 Mass., 161, 76 N. E., 601.

Even if it could be concluded that the utterances were qualifiedly privileged, it is always a question for the jury, whether words spoken, if actionable in themselves, are spoken maliciously, and with a defamatory intention. *Switzer v. Express Co., supra.*

The appellants complain that the trial Judge in his charge to the jury left it to the jury to determine whether the spoken words were slanderous *per se.* The record shows that there was some difference in the testimony of various witnesses as to the nature and extent of the slanderous words which gave rise to more than one reasonable construction. It has been held by this Court that, where the words written or spoken are libelous or slanderous *per se,* it is the duty of the Judge to so declare and leave the other issues in the case to the jury. It has further been held that, where the words written or spoken are susceptible of more than one meaning, it is proper for the Circuit Judge to leave it to the jury as to whether the meaning is defamatory or innocent, taking into consideration all of the circumstances surrounding the entire transaction. *McLain v. Reliance Life Ins. Co. of Pittsburgh, Pa.,* 150 S. C., 459, 148 S. E., 478; *Williamson v. Askin & Marine Co.,* 138 S. C., 47, 136 S. E., 21; *Black v. State Co.,* 93 S. C., 467, 77 S. E., 51, Ann. Cas., 1914-C, 989.

We do not think that there is any merit in this exception.

It is next contended that the trial Judge erred in charging the jury as follows: "If the defendants undertook to justify the slander and prove the truth of the statements, and failed because justification is unsupported by the evidence, it may be considered a circumstance of aggravation, and a continued and express malice, and may properly be considered by the jury in estimating the damages."

It is generally held that there is peril to the defendant in his plea of justification. It is, to a certain extent, a repetition of the slander or libel, and unless sustained, may be considered by the jury as aggravating damages. *Burckhalter v. Coward,* 16 S. C., 435; *Finch v. Finch,* 21 S. C., 342; *Gathings v. Great Atlantic & Pacific Tea Company,* 168 S. C., 385, 167 S. E., 652. This exception is overruled.

The appellants assign error because their motion for a new trial, based upon the ground that the amount of the damages assessed by the jury is so excessive as to shock the conscience of the Court, was refused. This contention is without merit.

In view of the evidence before the jury, the charge against the plaintiff was a serious one, and the matter of fixing the amount of damages was peculiarly within their province. The granting or refusal of a new trial on this ground is in the discretion of the trial Judge, and unless there is abuse of discretion, which is not shown in the present case, this Court will not interfere. *Turner v. Montgomery, Ward & Company, supra; Brewer v. Atlantic C. L. R. Co.,* 149 S. C., 454, 147 S. E., 596.

We do not think that the trial Judge misconstrued the law or the facts.

All exceptions are overruled, and the judgment of the lower Court is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.