14550

NORTON v. GREAT ATLANTIC & PACIFIC TEA CO. *ET AL.*

(193 S. E., 126)

April, 1937.

*Messrs. Epps & Epps,* for appellants, cite:

*Mr. L. D. Jennings,* for respondent, cites:

October 14, 1937.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The plaintiff, a minor of sixteen years, brings this action by his guardian *ad litem* against the defendants, alleging slander. The trial of the case resulted in a verdict for the plaintiff, and it is now before us on one issue only, and that is, that the trial Court erred in refusing the defendants' motion for a directed verdict which was made upon the ground that no actionable words were shown to have been uttered; that the words spoken by the manager of the defendant were words of plain and ordinary meaning, unambiguous, and did not carry the charge or innuendo of stealing.

According to the plaintiff's version, the alleged slanderous words, constituting the basis of the action, were spoken in the presence and in the hearing of several persons, under the following circumstances: The respondent had been

working for the appellant, the Great Atlantic & Pacific Tea Company, off and on for about two years, as extra help or utility clerk. In the late afternoon of December 30, 1936, while he was so engaged, his father entered the store of appellant for the purpose of purchasing some groceries. The respondent waited on his father, and among the articles purchased by him were two sacks of meal. As the various articles were selected, they were placed on the counter by respondent, and an itemized list of them was made, on which the price was entered opposite each article. When the purchases were completed, the respondent handed to the manager of the defendant's store this list, together with a $10.00 bill received from his father. The manager took out the amount for the goods purchased, amounting to between $7.00 and $8.00, and gave him the change. The groceries were then carried by the plaintiff outside and placed in his father's automobile.

Upon his return to the store the plaintiff testified that this took place:

"A. When I entered the door, Mr. Bald said, you owe me thirty-four cents. I said for what. He said, you sold your father the meal at the wrong price and you knew better; he said, you knew damn well not to sell that meal at that price. I said, I beg your pardon, the price tag is on the meal, and you sell by the price tag, because day before yesterday you changed the price tags in this store. And he said, you owe me thirty-four cents, and I said, I am not going to pay it because I don't owe it, and that gave the impression right then—

"Q. Just say what he said. A. Well, he went to the back of the store and says again, you knew better than to sell that meal for that price, and I said, I didn't know any better, because I sold by the price at that time and I will not pay the difference of thirty-four cents. I went back, and he came back up, and he said, take your apron off, you can go home. And I did.

"Q. When he told you you had given your father a package of meal, what did he say the package should be sold for? A. I think he said thirty cents, thirty-four cents, I think.

"Q. It would have been sixty-eight cents for the two? A. Yes, sir.

"Q. And he said you knew better than to let your father have it for that? A. Yes, sir."

It appears from the evidence that the meal referred to was put up in packages of three different sizes—retailing at 10, 17, and 34 cents each. Clerks were instructed by the manager to sell goods on the shelves in accordance with price tags placed on them. It seems to be definitely established that the largest sacks of meal (the size purchased by plaintiff's father), supposed to be sold at 34 cents, did not have a 34-cent price tag upon them. According to the testimony of the manager, this was an oversight. The plaintiff testified that these sacks had a price tag of 17 cents, and that he had been selling them at that price all day.

The appellant's manager admitted that he demanded the price differential from the plaintiff, and that he told the plaintiff with reference to the price of the meal sold to his father "that he (plaintiff) knew better than that," but that he only meant to convey the idea that the plaintiff had made a mistake in the price. He denied that he had done anything more, or intended to do anything more, than correct the plaintiff, and did not intend to charge him with stealing.

Considering the testimony of the manager alone, it may well be argued that what he said to the plaintiff did not violate the proprieties of the occasion nor invade the plaintiff's legal rights. But there is other testimony in the record in connection with the alleged slanderous words which give rise to more than one reasonable inference about the matter. The plaintiff says that he was discharged, and told to take his apron off. It is true that he went back the next afternoon

and again worked, but on the day following he was told that the defendant would have no further need of his services. There is testimony on behalf of the appellant tending to show that the plaintiff was notified that he would no longer be needed because he was not available, and could not be reached at a particular hour, when the defendant needed the services of a clerk, and that for this reason his place had been filled by some one else.

It is argued that the defendant was actuated by no ulterior motive in the plaintiff's discharge, and that such discharge was brought about by circumstances having no connection with the meal transaction.

The issue before us is whether, under the circumstances, the words "You knew better than to sell that meal at that price" take on a defamatory import, when followed by the plaintiff's alleged discharge—keeping in mind the implication arising from the fact that the sale was made to a member of the plaintiff's own family.

It was said in *Oliveros v. Henderson* (*Terwilliger v. Henderson*) (2 cases), 116 S. C., 77, 106 S. E., 855, 857:

"A libel *per se* is one which is actionable on its face. A *per quod* libel, however, is one not actionable on its face, but becomes so by reason of the peculiar situation or occasion upon which the words are spoken or written.

"As stated in 13th Ency. Pleading and Practice, and adopted in *Hubbard v. Furman University*, 76 S. C., 510, 57 S. E., 478:

" 'If the alleged defamatory words are not actionable on their face, but derive their defamatory import from extrinsic facts and circumstances, such extrinsic facts and circumstances must be set forth and connected with the words charged by a proper averment.' "

In *Rowell v. Johnson et al.*, 170 S. C., 205, 170 S. E., 151, 152, the defendant was charged with having used the following language with reference to a clerk in its employ in the presence and in the hearing of divers persons: "Miss Rowell,

you are short in your register to the extent of $5.25, and you need not return in the morning for work, but you are discharged, and need not return." In that case the Court said:

"We think the demurrer was properly overruled. Even if the words used did not convey in themselves the meaning that respondent would assign to them, the extrinsic circumstances pleaded, coupled with such words, rendered them actionable. One of the alleged duties of plaintiff, as a clerk, was to register the amounts of money taken in by her, and this she had been doing over a period of time. Shortly after she received 'steady employment,' she was charged by the defendant's agent, in the presence of others, with being short to the extent of $5.25 and, in the same connection, was advised that she was discharged. In these circumstances, we think the words used would naturally be understood to carry with them the imputation or accusation of a criminal act on the part of the person to whom they were directed.

"Nor do we think that the trial Judge committed error in his refusal to direct a verdict upon the grounds that the alleged defamatory words were not actionable *per se* in that they charged no crime, and that no special damages were either alleged or proved. The position of the appellant is that, as a cash register is no more accurate than the operator of it, the defendant merely charged the plaintiff, by the language used, with carelessness or inefficiency.

"In Odgers on Libel and Slander (1st Am. Ed.), 116, we find: 'It is not necessary that the defendant should, in so many words, expressly state the plaintiff has committed a particular crime. * * * Any words which distinctly assume or imply the plaintiff's guilt, or raise a strong suspicion of it in the minds of the hearers, are sufficient.'

"In *Davis v. Johnston*, 2 Bailey, 579, the Court said: 'The rule in verbal slander, as to the construction of words, is, that they are to be understood in their ordinary and popular meaning. If words are susceptible of two meanings, one imputing a crime, and the other innocent, the latter is not to

be adopted, and the other rejected, as a matter of course. In such a case, it must be left to the jury to decide in what sense the defendant used them.' " In support of this holding see *Lily v. Belk's Department Store,* 178 S. C., 278, 182 S. E., 889, and *Culler v. Great Atlantic & Pacific Tea Company et al.,* 183 S. C., 352, 191 S. E., 67.

The testimony, viewed in the light most favorable to the plaintiff, clearly tends to show that the defendant through its local manager charged the plaintiff with knowingly and intentionally selling his father two sacks of meal and collecting therefor only half of the selling price—in effect, stealing from the defendant.

In the light of all the circumstances, we think that the words used would naturally be understood to carry with them the imputation or accusation that a criminal act had been committed by the person to whom they had been directed.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did, not participate on account of illness.