15929

NETTLES v. MACMILLAN PETROLEUM CORPORATION

(42 S. E. (2d) 57)

See also 208 S. C. 81, 37 S. E. (2d) 134.

*Messrs. Nelson, Mullins & Grier,* of Columbia, for Appellant, cite:

*Messrs. William P. Donelan* and *Fred D. Townsend,* of Columbia, for Respondent, cite:

March 28, 1947.

FISHBURNE, A J.: The action is for slander. Upon trial, at the close of the testimony offered by the plaintiff, the defendant moved for judgment of nonsuit on the ground that the words proved to have been spoken were not actionable *per se,* and that inasmuch as the plaintiff offered no evidence to show the meaning of such words as interpreted by any person present who may have heard them, there was not sufficient evidence to go to the jury on the question of slander. This motion was granted, and from this ruling the plaintiff appeals.

The substance of the allegations of the complaint and the proof offered to support them, is that the defendant falsely and maliciously accused the plaintiff of having committed an embezzlement of the property and funds of his employer, a Mr. George, amounting to larceny.

Appellant, who was the only witness in his behalf, testified that a representative of the respondent, MacMillan Petroleum Corporation, came to Columbia and arranged with Mr. George to sell its products in Richland County as a dis-

tributor. That plaintiff, as an employee of George, was given complete charge of the sale of these products, and would travel from point to point in furthering their sale. He had full control of credits and collections, and with reference to such matters was authorized to exercise his own judgment. That in the discharge of his duties he borrowed and used from time to time some of the money collected by him, with the knowledge and consent of George, and that "every Monday morning they would check up and he would tell Mr. George just exactly what to charge to him and what not to, and what accounts were all right to let them alone, not to bother them because he wanted to make a success of this thing."

Some time in July, 1939, the respondent sent its representative, Mr. Eichelberger, to Columbia to fully explain the use of its products and to promote the sales thereof; and to this end, travel around with appellant to interview prospective customers and check up on the business done. Later, a second visit was made by Mr. Eichelberger, accompanied by Mr. Deitrich, another representative of respondent, which furnished the setting for this action. ·

The words alleged to have been slanderous were uttered in the place of business of Mr. George after Mr. Deitrich had inspected appellant's accounts showing various sales of respondent's products and the collections made thereon. In looking over a sales account Mr. Deitrich said:

"What about this account here?" I said, "It is all right. It is charged up to me. That is good". And he went through a bunch of them and he never said anything about any credits or anything. It went to about a little over $125.00 and he said, "Do you owe this money?" I said, "I don't know that this is any of your business". I said, "I didn't come out here to check up with you or anbody anyway". He said, "Don't you know you made yourself liable to get out with this money and dispose of it and not turn this money in to Mr. George"?

The cause of action for slander is based upon the last sentence just above quoted, and the plaintiff testified that these alleged slanderous words were spoken to him by Mr. Deitrich in the store of Mr. George in the presence and hearing of Mr. Eichelberger, Mrs. George, and other people standing around in the store. The plaintiff offered as a witness no person who was present, to show that the language was used in the defamatory sense alleged in the complaint.

In passing upon the motion for a nonsuit, the trial judge ruled that the alleged slanderous words were not actionable *per se* because they did not directly charge the appellant with the commission of any crime. He held that the spoken words were ambiguous and in effect were susceptible of both a slanderous meaning and an innocent meaning; and he ordered a nonsuit because neither the plaintiff or any witness who was present and heard the words uttered, testified as to what he or they interpreted those words to mean. Therefore, there was no question to submit to the jury.

The appeal presents but a single question: In an action for slander, where the words used are susceptible of two meanings, one imputing a crime and the other innocent, should the plaintiff be nonsuited because he failed to produce at least one of the hearers as a witness to testify that he understood the words to mean that the speaker charged appellant with the commission of a crime?

The general rule is that the testimony of readers or hearers in actions for libel or slander, as to what they understood the alleged defamatory words to mean, is inadmissible, at least where the words are unambiguous and plain and in the absence of peculiar circumstances, either as respects the language employed or the manner of its utterance or publication. However, such evidence is held to be admissible where the meaning of the words is doubtful or ambiguous. *Morgan v. Livingston, 2* Rich. Law, 573 (31 S. C. L. 573); 37 C. J., Sec. 463, Page 71; Annotation, 18 Ann. Cas. 833.

Accordingly, it has been held that where the words which are the basis of an action of libel or slander may or may not impute a crime to the plaintiff, the testimony of persons who read or heard the words uttered is admissible. *Morgan v. Livingston,* 2 Rich. Law 573 (31 S. C. L. 573). Such testimony when given is considered to be an exception to the general rule, that a witness must confine himself to a statement of facts and cannot give his opinion upon questions involved.

Our court has held without exception that the alleged slanderous words used must be given their ordinary popular meaning, and if they are susceptible of two meanings, one slanderous and the other innocent, it must be left to the jury to determine from all of the circumstances attending the publication, in what sense the defendant used them. *Campbell v. Life and Casualty I. & S. Co. of Tenn.,* 155 S. C. 62, 152 S. E. 18, and cases cited therein.

But this does not mean that a plaintiff may be nonsuited because he fails to introduce evidence of witnesses who were present as to the meaning the words conveyed to them. The resort to witnesses for their understanding of the words, where the language is complete in itself, is only one means of ascertaining how "the rest of the world would understand them". Where the meaning of the words is doubtful or ambiguous, witnesses who heard them may be examined as to the sense in which they understood them, but it is the province of the jury to construe words, and to determine in what sense the speaker used them. *Morgan v. Livingston, supra; Gill v. Ruggles,* 95 S. C. 98, 78 S. E. 536.

The general rule is well stated in Odgers on Libel and Slander (1st Am. Ed.) at Page 539:

"The plaintiff may give evidence of surrounding circumstances from which a defamatory meaning can be inferred; he may call witnesses to state how they understood the libel; though the jury are not bound to adopt the opinions of such witnesses."

It is elementary that the burden of proof is on the plaintiff to show to the satisfaction of the jury that the language used was defamatory. It may be that some hearers would testify one way and some another, but the jury would not be bound by their construction. It would be for the jury to say whether or not the language used had a defamatory meaning and whether or not it would have been so understood by a reasonable person under all the surrounding circumstances. *Sheftall v. Central of Georgia R. Co.,* 123 Ga. 589, 51 S. E. 646; 33 Am. Jur. Sec. 25, Page 51.

In the case at bar, the trial judge ruled that the words spoken by respondent's agent were ambiguous. The language used, and all of the extraneous and surrounding circumstances were testified to. In this situation, the question as to whether or not respondent's agent used the words in a defamatory sense, and whether they were so understood by the hearers, was a question for the jury. *Reynolds v. Southern Grocery Stores,* 192 S. C. 293, 6 S. E. (2d) 470; *Turner v. Montgomery Ward & Co.,* 165 S. C. 253, 163 S. E. 796.

In our opinion, a new trial must be granted. The respondent, of course, is privileged to go to the jury upon the theory that the words, if ambiguous, were not used in a defamatory or slanderous sense, and that, under the circumstances attending the publication, the hearers could not reasonably so have understood them, but such an issue is one of fact, not of law.

Judgment reversed.

BAKER, CJ., and STUKES, TAYLOR and OXNER, JJ., concur.