## SANDIFER v. ELECTROLUX CORPORATION.

### No. 5820.

United States Court of Appeals
Fourth Circuit.

Feb. 11, 1949.

Wade S. Weatherford, Jr., of Columbia, S. C., and John C. West, of Camden, S. C. (Murchison & West, of Camden, S. C., on the brief), for appellant.

Douglas McKay, Jr. and Douglas McKay, both of Columbia, S. C. (J. W. McKay and Roger M. Heyward, both of Columbia, S. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Plaintiff, Sandifer, sued defendant, Electrolux Corporation, in the United States District Court for the Eastern District of South Carolina, for slanderous remarks alleged to have been made by one Holmes, an agent of defendant. The facts leading up to and surrounding the alleged slander are briefly as follows.

Plaintiff, owner and operator of a grocery store in Columbia, South Carolina, worked on a part time basis for defendant as salesman for its vacuum cleaners and supplies. In this capacity, he solicited orders from customers on the basis of future deliveries of the machines, usually within six months; and the machines, as they became available at defendant's Columbia office, were then turned over to plaintiff for delivery in fulfillment of these orders. Plaintiff, upon delivery of the machines, either collected the full amount due on the purchase price or executed time payment contracts with the purchasers. All amounts thus collected by plaintiff were paid in full to the defendant corporation, plaintiff being compensated by commissions subsequently paid back to him. Operating in this manner, plaintiff was under a surety bond conditioned for the full and faithful discharge of his duties, including the accounting to defendant for all funds coming into his hands in connection with his employment.

In May, 1947, plaintiff received an allotment of eighteen machines for delivery in the customary manner. In July, Holmes, a traveling auditor for defendant, while auditing the books of defendant's Columbia office, found that no accounting had been made of five of these machines. Since, according to Holmes' testimony, it was a rule of the company that all machines be either sold or returned within two weeks, Holmes decided to call upon plaintiff at his place of business and did so on the afternoon of July 25, 1947.

The testimony is in considerable conflict as to what occurred at that meeting, but we are not now concerned with this conflict. Plaintiff's version, as alleged in his complaint and testified to by his witnesses, is that Holmes entered the store, directly approached plaintiff "in a rude, angry * * * and offensive manner, and in a loud, harsh, malicious, insulting and offensive tone of voice said to plaintiff, 'I want the machines now or I want the money or I will report you to the bonding company immediately,'" that the said words "were capable of and did by insinuation and innuendo charge plaintiff with dealing dishonestly * * * or with being guilty of some crime" and that the words were so understood by others in whose presence and hearing they were uttered.

At the conclusion of the evidence, the District Judge submitted to the jury the question of whether or not the words imputed to plaintiff the commission of a crime involving moral turpitude or charged unfitness to perform the duties of a legitimate employment, charging in this respect that the jury should consider the relationship of the parties and all circumstances surrounding the utterance. To this portion of the charge there was no objection. The Judge then charged, however, that plaintiff could recover only if he proved special or actual damage. Plaintiff excepted to this portion of the charge that placed upon him the burden of proving actual damage even if the jury should conclude that the words, in view of the surrounding circumstances, charged him with the commission of a crime. The jury returned a verdict in favor of the defendant. Plaintiff's motion for a new trial, based on this exception, was overruled and he has duly appealed to us.

The appeal presents but a single question: Under South Carolina law, when words do not on their face impute the commission of a crime, but when the jury after considering them in the light of the circumstances surrounding their utterance attaches to them this meaning, must a plaintiff prove special damage in order to recover?

We are forced to recognize at the outset that there is some apparent conflict in the South Carolina decisions. The principal difficulty seems to arise, in part, from divergent and inconsistent meanings at-

tached at different times to the phrases slanderous per se, actionable per se and slanderous per quod. Since we are not as concerned with the appropriate connotations to be given these phrases as with the legal results which flow from the situations they describe, we shall avoid their use insofar as possible and make no attempt to clarify their meanings in the law of South Carolina.

It is undoubtedly true as a general proposition that there is no requirement of proof of actual damage where the spoken words plainly and falsely charge the commission of a crime, the contraction of a contagious disease, adultery or a want of chastity, or unfitness in the way of a profession or trade. See Galloway v. Cox, 172 S. C. 101, 172 S. E. 761, 762, quoting from Black's Law Dictionary, 3d ed., 1104. From the natural and immediate tendency of such words to produce injury the law presumes that some damage has occurred, although no actual loss or damage is, or can be, proved. Any special damage that has in fact accrued, however, may of course be proved. Newell, Libel and Slander § 745.

The question, here, is whether this presumption of damage arises where the words do not *on their face* charge the commission of a crime but have this effect only when considered in connection with all the surrounding circumstances. We think that it does.

In Odgers, Libel and Slander, 1st Am. ed., 116, we find: "It is not necessary that the defendant should, in so many words, expressly state the plaintiff has committed a particular crime. * * * Any words which distinctly assume or imply the plaintiff's guilt, or raise a strong suspicion of it in the minds of the hearers, are sufficient." And as a logical matter it should be immaterial whether the commission of a crime is charged positively and directly by words of clear and unmistakeable meaning or only indirectly and by means of innuendo. So long as the words are understood by third persons to make the charge, the effect from the standpoint of damage done may be calculated to be the same. It has, in fact, been noted

several times by the South Carolina courts that a hidden charge made by insinuation and innuendo may inflict graver injury and injustice than a direct and specific accusation which, if false, may be more easily met and refuted. Lily v. Belk's Department Store, 178 S.C. 278, 182 S.E. 889, 891; Duncan v. Record Publishing Company, 145 S.C. 196, 143 S.E. 31, 41. See, also, Palmerlee v. Nottage, 119 Minn. 351, 138 N.W. 312, 42 L.R.A.,N.S., 870.

Whether the words directly and on their face make the charge or do so only by way of insinuation and innuendo is, of course, important from the standpoint of trial procedure. When the words are perfectly clear and unambiguous, their character as defamatory is a question of law for the judge whose duty it is to instruct the jury as a matter of law either that the words are, or are not, defamatory. Galloway v. Cox, supra; Phillips v. Union Indemnity Co., 4 Cir., 28 F.2d 701 (libel). But if the language, given its ordinary and conventional meaning, is ambiguous and reasonably susceptible of two meanings—one innocent and the other charging the commission of a crime—it is for the jury to decide in what sense it was used. Nettles v. MacMillan Petroleum Corporation, 210 S.C. 200, 42 S.E.2d 57; Tucker v. Pure Oil Co. of the Carolinas, 191 S.C. 60, 3 S.E.2d 547; Campbell v. Life & Casualty Ins. Co., 155 S.C. 63, 152 S.E. 18; Davis v. Johnston, 2 Bailey, S. C., 579. Once the words are interpreted to charge the commission of a crime, however—whether this determination is made by the judge as a matter of law or by the jury—damages are presumed and there is no requirement of proof of actual damage. While, as we have indicated, the South Carolina decisions are not uniform in this respect, by far the greater number of them, and especially the later cases, clearly establish this principle as the law of South Carolina.

In Turner v. Montgomery Ward & Co., 165 S.C. 253, 163 S.E. 796, the question of the defamatory character of the words was left to the jury, and on appeal error was assigned to the failure of the trial judge to direct a verdict on the ground that the words were not actionable per

se, in that no crime was charged, and there was no allegation or proof of special damage. In affirming a judgment for the plaintiff, the court said (163 S.E. at page 799): "Viewed from any angle, we think the trial Judge properly submitted this question to the jury, and *they having found that the defendants' language charged plaintiff with the commission of a crime,* it was actionable per se, and *there was no necessity for any allegation or proof of special damages.*" (Italics ours.)

This passage was quoted with approval and followed in Rowell v. Johnson, 170 S.C. 205, 170 S.E. 151, 152. There, again, the words did not on their face charge the commission of a crime and the question of their meaning had been submitted to the jury. As in the Turner case, the defendant contended that verdict should have been directed in his favor because of the lack of proof of special damage, and again the court overruled this contention and affirmed judgment for the plaintiff.

In Merritt v. Great Atlantic & Pacific Tea Co., 179 S.C. 474, 184 S.E. 145; Leevy v. North Carolina Mut. Life Ins. Co., 184 S.C. 111, 191 S.E. 811; and Reynolds v. Southern Grocery Stores, Inc., 192 S.C. 293, 6 S.E.2d 470, the identical argument was made on behalf of the defendants and was in each instance overruled. Cf. Norton v. Great Atlantic & Pacific Tea Co., 184 S.C. 525, 193 S.E. 126. It is interesting to note that the court in the Reynolds case [192 S.C. 293, 6 S.E.2d 471], in answering the contention that "the Court erred in refusing to hold as a matter of law that the words were not actionable per se, and that there could have been no recovery therefor in the absence of allegation and proof of special damages," had this to say:

"The questions made by these two exceptions have been so clearly and explicitly decided against the contention of appellant that we deem it only necessary to cite and quote a few of the apt opinions of this Court."

The court then cited, among others, the Rowell, Turner and Merritt cases.

The defendant relies strongly on the case of Bell v. Clinton Oil Mill, 129 S.C. 242, 124 S.E. 7, which it is alleged, decides that whether or not the words charge the commission of a crime (within the meaning of the rule that such words do not require proof of actual damage) is a matter of law to be determined by looking only at the face of the words. Although never expressly overruled, the Bell case has achieved its greatest prominence as the basis of dissenting opinions. See Campbell v. Life & Casualty Ins. Co., supra; Pierce v. Inter-Ocean Casualty Co., 148 S.C. 8, 145 S.E. 541; Duncan v. Record Publishing Company, supra; cf. Norman v. Stevenson Theatres, 159 S.C. 191, 156 S.E. 357 (wherein the defendant relied upon the Bell case which the court completely ignored in affirming judgment for the plaintiff). To the extent that the Bell decision is inconsistent with the holdings above noted, it must be taken to have been overruled.

The defendant relies, also, upon Sawyer v. United Cigar Stores, 180 S.C. 70, 185 S.E. 38; Galloway v. Cox, supra; and Spigner v. Provident Life & Accident Ins. Co., 148 S.C. 249, 146 S.E. 8. All three resulted ultimately in dismissal of the plaintiff's complaint. While the precise bases of the holdings are not entirely clear, each of the three may conceivably be distinguished from the Bell case on a theory that, even considered with their surrounding circumstances, the words involved were not susceptible of an interpretation whereby they charged the commission of a crime. But to the extent that they follow the line of the Bell case, these cases, too, must stand in direct opposition to the many strong and clear decisions already cited.

Finally, the defendant notes that, in an early part of the charge, the Trial Judge instructed the jury "that the words alleged are not slanderous per se." Defendant urges that, under Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A., since no seasonable objection was made to this instruction it is now the law of the case. But when the charge is considered as a whole, it is apparent that the Judge thus meant to instruct only that the words did not *on their face* charge the

commission of a crime. In the remainder of the charge he made it possible for the jury so to interpret them. We think, however, that the Judge then erred in further instructing that, even if the jury attached such a meaning to the words, the plaintiff was required to prove special damage in order to recover.

For this error the judgment is reversed and the plaintiff awarded a new trial.

Reversed and remanded.